# CHARLES J. BONAPARTE *vs.* HENRY D. THAYER
## ET AL.

*Landlord and Tenant—Entry by Tenant Under Unfulfilled Agreement to Sign Written Lease—Tender of Payment by Check—Tenant Not Authorized to Deduct From Rent For Repairs Made by Him Without Landlord's Consent—Distraint For More Rent Than Due—Action For Illegal Distress—Impeaching Credibility of Witness—Indictment Entered Stet.*

Where a landlord agreed to rent a house to a husband and wife upon the terms set forth in a written lease, which was signed by the wife alone and it was agreed that the husband would sign the lease when certain repairs were made, then if the lessees enter into possession before the repairs are made they waived their right to insist upon the repairs as a condition precedent to their liability, and they are bound by a verbal contract similar in terms to the unexecuted lease.

A party who enters into possession of property as tenant, after promising to sign a designated written lease containing the terms of the tenancy, cannot rely upon the fact that he did not afterwards sign the lease as relieving him from any of the obligations therein imposed.

A check sent by a debtor to his creditor is a sufficient tender of the amount, when the debtor has funds in bank applicable to the payment of the check and previous payments between the parties had been made by check, and the creditor refuses to accept the check on grounds other than because the money was not produced.

Since a landlord is under no obligation to make repairs to the demised premises in the absence of an agreement to that effect, a tenant has no right to deduct from the rent due the cost of repairs made by him, and if he does so, the landlord has a right to distrain for the balance of the rent still owing.

In an action where the declaration alleges an illegal distress by the defendant and unlawfully carrying away plaintiff's goods, the plaintiff is not enttitled to recover if some rent was then due, but the distraint was for an excessive amount, provided it was regular in form.

Plaintiff's wife agreed on behalf of herself and husband to rent a house from defendant for one year beginning on September 1st, the rent to be payable on the first day of each month in advance. The written lease was then signed by plaintiff's wife but plaintiff himself did not sign it, although he promised to do so when certain repairs to the house were made and although he was subsequently requested by the defendant to sign. The lease made no mention of repairs. Plaintiffs entered in posses-

sion and the repairs promised by the landlord were made by him after entry. In October the plaintiffs deducted a certain sum from the rent for a repair made by them and paid only the balance on account of that month's rent. Defendant refused to assent to this deduction. The November rent was paid after it was due but did not include the deduction made as aforesaid, and in that month plaintiff was notified either to sign the lease or to vacate the premises but plaintiff refused to do either. Plaintiff's wife in December sent a check to defendant for the amount of that month's rent which was returned with a repetition of the notice to quit and a request for the keys of the house. A few days later, the notice not having been complied with, defendant levied a distress to recover a sum which included the December rent and the amount previously deducted by the plaintiffs for repairs made by them. In an action to recover damages for an illegal distress, *Held*,

1st. That under these circumstances the plaintiffs were both bound by the terms of the written lease, although one of them did not sign it, since the law implies a parol contract of similar import.

2nd. That the defendant as landlord was not bound to make repairs after the commencement of the tenancy, and plaintiffs consequently had no right to deduct from the rent for October the cost of a repair made by them.

3rd. That the check for the December rent sent to the defendant was a tender of the amount due for that month, since plaintiff's checks had previously been accepted by defendant in payment and this check would have been paid if presented, and defendant had no right to distrain if no other rent was due by the plaintiffs, but if the amount improperly deducted from the October rent for repairs was found by the jury to be still due, then the plaintiffs are not entitled to recover in this action.

The credibility of a witness cannot be impeached by documentary proof that he had been indicted for false pretences and a *stet* entered thereon, since the mere fact of indictment is not proof of guilt.

A witness called to attack the credibility of a party was asked if he knew the general reputation of the latter for truth and veracity. The witness answered that he knew the party's reputation in that respect among his business associates but not among his general associates. *Held*, that the witness was not competent to testify as to the party's reputation for truthfulness.

Appeal from the Court of Common Pleas (HARLAN, C. J.), where there was a verdict for the plaintiffs for $250. In the first exception, the defendant offered in evidence a copy of docket entries from the Criminal Court of Baltimore, showing that one H. D. Thayer had been indicted for false pretenses and that a *stet* had been entered by the State on payment of costs.

*Plaintiffs' 1st Prayer.* If the jury find that the plaintiffs, in order to pay the rent due on premises 1519 Myrtle avenue, sent the defendant the check, dated December the 1st, 1900, for ($18.50), and that the plaintiffs had paid rent before by check, and that the defendant had agreed and did accept checks in payment of rent when tendered, and that the said check would have been paid when presented at the bank upon which it was drawn, there being sufficient funds in the bank standing to the credit of the plaintiff Mary Blanche Thayer to pay said check if presented, and that the defendant returned said check after he had received it, accompanied by his letter of December the 3rd, 1900, offered in evidence, then said check, under these circumstances, if the jury so find, was an offer to pay the rent in advance for the month of December, 1900, and the returning of said check by the defendant as mentioned in his letter of the 3rd of December, 1900, was a refusal by the defendant to accept said rent from the plaintiff. (*Granted.*)

*Plaintiffs' 3rd Prayer.* If the jury believe from the evidence that the defendant refused to accept the check as payment of the December rent, not because it was a check, but because he demanded the possession of the premises 1519 Myrtle avenue, as set out in his letter of December 3rd, 1900, then the defendant had no right in law to issue a distraint for the amount cf said check, to-wit, ($18.50), and if there was no other rent due and in arrear, from the plaintiffs to the defendant, the distraint mentioned in evidence was unlawful. (*Granted.*)

*Plaintiffs' 8th Prayer.* If the jury find from the evidence, that when the plaintiff Mary Blanche Thayer signed the paper writing offered in evidence, the defendant's agent, C. E. Manning, told the plaintiff, Mary Blanche Thayer, that the said instrument of writing would not be binding or valid until her husband Henry D. Thayer had also signed it, and she signed it with this understanding and the jury find that said Henry D. Thayer never did sign said instrument of writing, then said instrument of writing is not a contract of rental between the plaintiffs and the defendant. (*Granted.*)

*Plaintiffs' 9th Prayer.* Even if the jury should find that there was a written agreement of rental in this case, still, the defendant had no right in law to issue distraint proceeding, unless the jury further find from all the evidence that the plaintiffs had become in arrear for rent at the time the distraint was issued and the plaintiffs were indebted to the defendant for rent of the premises 1519 Myrtle avenue. (*Granted.*)

*Defendant's 2nd Prayer.* It appearing from the plaintiffs' evidence that they held the premises No. 1519 Myrtle avenue on December 5th, 1900, as either yearly tenants or tenants for one year of the defendant ; that there was rent then due and in arrear by them as such tenants, and that the distraint alleged to have been then levied was regular as to all matters of form, the jury are instructed that, under the pleading and all the proof, their verdict must be for the defendant. (*Refused*)

*Defendant's 8th Prayer.* The jury are instructed that if they find that on or about the 31st day of August, 1900, Mary Blanche Thayer, one of the plaintiffs, and the witness Manning, acting as the agent of the defendant, signed an agreement of lease of the premises 1519 Myrtle avenue for the term of one year from said date for the sum of two hundred and twenty-two dollars, payable in monthly instalments of eighteen dollars and fifty cents on the first day of each and every month in advance ; and that in said agreement the defendant was described as landlord and the said Mary Blanche Thayer and Henry D. Thayer, her husband, were described as tenants. And if they further find that it was understood by and between the plaintiffs and the defendant that said agreement was not to be binding until certain repairs were made by the defendant for the purpose of putting said premises in a tenantable condition, and that the said Henry D. Thayer would then sign said agreement. And if the jury further find that the plaintiffs thereupon, with the consent of the defendant, entered into possession of and occupied said premises, and that on the 5th day of December, 1900, the defendant had

received from the plaintiffs the full amount of rent payable under said agreement up to that time except the sum of seventy-five cents, and that said sum on said date remained unpaid. Then the plaintiffs are not entitled to recover in this action whether said repairs were made or not. (*Refused.*)

*Defendant's 10th Prayer.* The jury are instructed that, even if they find a verdict for the plaintiffs, the measure of damages is double the value of the goods or chattels belonging to the plaintiffs, which the jury shall find were distrained and sold. (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE SCHMUCKER and JONES, JJ.

*William Reynolds* and *Richard S. Culbreth*, for the appellant.

*Howard Bryant*, for the appellee.

PAGE, J., delivered the opinion of the Court.

This suit was brought to recover damages for the seizure and sale of the appellees' goods, under a distraint alleged to have been wrongfully and illegally made, at a time when no rent was due.

The *narr.* contains three counts ; the first sets out the illegal distress ; the second that the appellant forcibly and unlawfully took and carried away the plaintiffs' goods, etc.; and the third, that the appellant broke and entered the plaintiffs' house, and seized and took possession of and carried away the appellees' goods, whereby the plaintiffs were deprived of the use and benefit of the same. The first and second pleas were the general issue ; the third made the averment that the plaintiffs agreed to lease the property of the defendant for one year upon the terms set forth in a certain written lease, signed only by Mary B. Thayer, but assented to by her co-plaintiff, and that the plaintiffs in the meantime at their own request, by the permission of the defendant, took possession of the premises and paid rent as tenants of the same, and that on the 5th of December the rent being in arrear and unpaid to the amount

of $19.25, the defendant issued a distraint warrant for the collection of the same under which the goods of the plaintiffs were regularly and in due process of the law, taken and sold, and the proceeds, after the payment of expenses, being the sum of $14.36, were applied on account of rent due to the defendant. The plaintiffs in their replication denied the alleged lease of the property; that any rent was due; and averred that the said alleged lease was "vacated and surrendered" before the said proceedings, that the rent was tendered but refused by the defendant who claimed possession of the property, and that the distraint warrant was illegally issued by the defendant.

The negotiations for the rent were begun on the 25th of August, by Mrs. Thayer and Mr. Manning, the latter being the agent of Mr. Bonaparte. At the interview of that date between them, Mrs. Thayer paid ten dollars to Manning, who gave her a receipt therefor, which set forth that it was for "Account September rent 1519 Myrtle ave." A few days later the Thayers moved into the house.

On the 30th of August both the Thayers met Manning on the property, and Manning then agreed to have certain repairs done. On the next day Manning and Mrs. Thayer again met, and the latter signed a lease for the property. The term mentioned in this paper was one year from the first of September at the rate of $222.00 per annum payable in instalments of $18.50 per month in advance. Thayer never signed this lease, but he admits that "he agreed to sign it when the repairs were finished;" and Mrs. Thayer testified that it was agreed, she should not be bound by it until her husband had signed it.

It seems to be clear therefore, upon the evidence of the appellees, that while the written lease may not be operative as an executed paper, yet possession of the premises was taken by the appellees with a clear understanding between the parties that there should be a written lease between them, and that the paper which was signed by Mrs. Thayer, but not by her husband, was the instrument that they contemplated

should be executed    The testimony on the part of the appellant varies somewhat from the statements made by the appellees.    According to Mr. Manning's testimony, the Thayers were told that the lease must be signed before they could take possession, and the keys of the house were not to be given up to them until the lease was actually signed ; and that the next day Mrs. Thayer signed the lease and said Mr. Thayer "would be in about dinner time" and sign also.

What may be the exact condition of fact upon this point is not very material, for the reason that if the appellees occupied the property with the understanding that the lease should be signed, then the law implies a verbal contract of similar import with the written lease, though it was never executed. *Emrich* v. *Union Stock Yard Co.*, 86 Md. 485.

It is contended however, that this principle does not apply, because the lease was not to be signed until the repairs were completed.    The evidence is conflicting as to whether the parties did actually so agree, but if they did, the precise time when the repairs stipulated for were finished is not made clear by the evidence, and the facts are practically conceded that the lease was to be signed at some time, and that the appellees took possession with that understanding.    If the agreement as to the signing is to be held as equivalent to an agreement that the term shall not commence until the repairs had been completed, then it might be possible that the appellees could have declined to enter at all, until after the repairs had been completed.

But under this hypothesis, if the appellees actually entered and occupied the premises before the completion of the repairs, it would be most inequitable to hold that they had not thereby waived their right to performance as a condition precedent to the beginning of the term.    If, therefore, the appellees entered into the possession of the premises under the agreement of renting set forth in the unsigned lease, they are legally bound according to the terms of the lease, although there may have been an understanding between the parties that the paper was not to be signed by Thayer until the re-

pairs had been completed. *Gears' Landlord & Tenant*, sec. 70; *Hoven* v. *Wakefield*, 39 Ill. 519; 1 *Washburn on Real Property*, 523, 5th ed. top page. If, on the other hand, there was no such agreement as to the time when Thayer should sign the lease, or if the repairs had in fact been completed before the Thayers signed it or made any tender to do so, it is clear they cannot use the fact that it was not signed as a defense to any of the obligations growing out of their condition as tenants of the property. If what has been stated be correct, it follows that the Thayers were the tenants of the property for the term of one year from the first day of September at the yearly rate of $222.00, payable in monthly instalments of $18.50 in advance.

The next question of leading importance—is there any evidence to show that rent was due at the time of the issuance of the warrant of distress on the 5th of December? The receipt shows that ten dollars was paid on account of September rent, on the 25th of August. It seems to be conceded that the balance of rent for September was also paid. The amount paid for October and claimed by the Thayers to be due for the month of October was $17.25; it being contended by them that they were entitled to a credit of seventy-five cents on the rent for that month, on account of the expense incurred by them in repairing a spigot which had given out after they had taken possession of the premises. During the month of November the rent for this month was paid in instalments during the month.

On the 7th of December the appellees sent to the appellant, Mrs. Thayer's check for $18.50 for the December rent but this was returned by Mr. Bonaparte. If Mr. Bonaparte was under an obligation to receive the check of December 1st, and to allow for the cost of the spigot, the rent had been fully paid at the time the distress was made.

It is contended by the appellant that the offer of the check did not constitute a tender, first because the actual money was not produced, and second because it was not made to appear that the appellees "always kept the money ready."

But there was evidence before the jury from which they could find that the drawer of the check had the funds in the bank to her credit sufficient to pay the check had it been presented, and further that theretofore checks of the same kind in payment of the rent had been accepted and that the appellant had made no objection to such a mode of payment.

Moreover Mr. Bonaparte in his letter of December 3rd made no objection to the character or quality of the tender, that it was by check and not in money, but refused to receive it on other grounds. It is not competent for him now to raise the objection that the tender was not made in money; that, in view of the circumstances we have stated, must be considered as waived. *MeGrath* v. *Gegner,* 77 Md. 330. As to the second objection, that it does not appear that the appellees did not "always keep the money ready." A tender does not discharge the debt; at most the proof of such tender and of its refusal will be to throw on the party refusing, the burden of all subsequent costs. Hence it is that the plea of tender at law is not sufficient unless there is a *profert in curia*; *Soper* v. *Jones,* 56 Md. 511; and in certain cases in equity, when it would be inequitable to allow the party who has made the tender to keep the money and make a profit from it unless it is made to appear that he has kept the money ready and made no profit on it, the interest will run on. This last is the principle decided in the Maryland case, *Columbian Assn.* v. *Crump,* 42 Md. 195; as well as in 2 *Powell on Mortgages,* page 210, referred to in the first mentioned case. But the alleged tender was set up in this case by the appellee in answer to the averment of the appellant in his plea that there was rent overdue, for which he had a right to distrain.

To meet the issue thus made, the appellee offered in evidence to show that for the December rent, they proffered their check, which was refused. The question here is was the appellant a trespasser?

It was certainly proper to show that by the tender of the money, the proceedings in distress was rendered unnecessary and illegal. *Hunter* v. *LeConte,* 6 Cowen, 730. Distress for

rent cannot "be legally made after tender of payment;" *Taylor on Landlord and Tenant*, sec. 1, 729.    As to the liability for the costs of repairing the spigot, it is not requisite to say more than that there was no agreement between the parties as to the payment for repairs rendered necessary during the tenancy.    In such cases it is not the duty of the landlord, to make repairs after the commencement of the tenancy.

If, therefore, the appellees deducted from the rent of October the price of the spigot, and paid on account thereof such sum only as remained due after so doing, the balance still was owing to the landlord.    If any rent was overdue, the right to distrain was in the appellant.    *Jean* v. *Spurrier*, 35 Md. 115. We will now examine the action of the Court upon the prayers offered by the parties.    Of the plaintiffs, the 1st, 3rd, 4th, 8th and 9th were granted.

We find no error in the first prayer.    It instructed the jury upon a single feature of the case, and that was, the legal effect of the tender of the check of Mrs. Thayer of the 3rd of December.    They were told that if they found the facts set forth in the prayer, that the return of the check was in legal effect a refusal to accept the rent.    It submitted to them all the evidence applicable to the particular subject with which it dealt, and had no tendency and could not have misled the jury.

The fourth prayer was improperly granted.    There was no evidence in the case from which the jury could find that the term for which the premises were granted was less than three months.    As we have said the term under all the circumstances shown in the evidence was for one year.

The third prayer was objected to, because it is alleged, there was no *sufficient* evidence that "no other rent was due and in arrear."

The prayer in the form in which it was granted, submitted in substance the question to the jury as to whether "other" rent was due.    It instructed them in substance that if they found the facts previously set forth in the prayer, the distraint was unlawful, unless they found also, there was "other rent due and in arrear."    The prayer was therefore properly granted.

The eighth prayer was objectionable, for the reason that it was calculated to mislead the jury. It might have been understood by the jury to mean that if they found the writing was not signed by Henry D. Thayer, that it was practically out of the case, and could not be regarded by them for any purpose. While dealing with the subject of the written lease, they should have been instructed, as to its effect when considered in the light of other circumstances in the case. This objection was it is true, partly obviated by the ninth prayer, which was properly granted. This prayer, however, instructed them only upon the hypothesis that there was a written contract of rental, but failed to inform them as to the effect of the evidence bearing upon the question as to the circumstances under which the appellees entered into possession. As we have said, if they entered with the understanding that the written lease was to be executed, then the law implied a verbal agreement, that the tenancy should be, according to the terms contained in that paper, though it was never, in fact, signed by Henry D. Thayer.

The appellants' 1st, 2nd and 5th prayers were properly refused. The second and fifth were objectionable in that, instead of leaving to the jury to find there was rent due and in arrears at the time of the distraint they assume the fact.

The seventh prayer instructed the jury that if the appellees took possession of the house, paid rent, and that the defendant did not agree to rent the property for a less time than a year, then the goods were subject to distraint for rent in arrears, as long as the appellees continued to so occupy the house, and under the "pleadings and proof" the verdict must be for the defendant. This excludes from the jury the effect of the actual contract entered into between the parties, and the question whether any rent was in arrear, but announces as a legal proposition that if the property was rented for a term of not less than a year, then the goods were subject to distress for rent in arrears, and under the pleadings and evidence there must be a verdict for defendant. Whether any rent was due or not depended upon the legal effect of certain facts, about some of which the evidence was conflicting.

The prayer should therefore have required the jury to find the facts of which the legal effect was predicable, viz : that rent was due and in arrear, before they were told that their verdict should be for the defendant. The prayer was therefore properly refused.

The eighth prayer should have been granted. It follows from what has already been said that if the appellees entered under the circumstances set out in the prayer, they became tenants for one year, at the rental stated in the unsigned agreement, payable in monthly instalments in advance, although the agreement was not to be signed until certain repairs for putting the property in tenantable condition were made, and if, at the time the distraint was made, there was rent due and in arrear, it was within the legal right of the appellant to distrain for the collection of such amount. The first count is for an illegal distress, the second is for unlawfully taking away, and the third is *quare clausum fregit.* All of them depend upon the question as to the right of the appellant to seize the property, and therefore if the distress was properly and legally made, even though it was excessive in amount, there can be no recovery on the pleadings as they appear in this case.

During the trial three exceptions by the defendant were taken to the offer of evidence. In the first and second, the appellee, Henry D. Thayer, having testified in his own and in his wife's behalf, the defendant tendered a certified copy of the docket entries in the case of the State against Thayer, which showed that Thayer had been indicted in the Criminal Court, but not convicted ; the appellees objected to its admission, and the Court refused to allow it to be read to the jury. Whatever may be the law elsewhere, the Courts of this State have always recognized the distinction pointed out in 1 *Greenleaf on Ev.* (16 ed.) sec. 461, between actual misconduct, itself, and the charge of misconduct ; and have excluded the latter. It is unquestionably a misfortune for a man to be indicted, but that fact alone is not always equivalent to guilt. An entirely innocent person may be the victim, and it would be a gross injustice, to permit what is only a charge of mis-

conduct, to be used to the prejudice, if not the ruin, of his good character. Especially would this be so, in a case like this where the charge was practically abandoned by the State. In *McLaughlin* v. *Mencke*, 80 Md. 88, the Court said that anything that would throw light on the credibility of the witness, may be offered. A mere indictment cannot do this, from the fact, that it cannot be questioned that a mere charge, unsustained by proof, does not have such an effect. This seems to be the view generally accepted by the Courts in most jurisdictions. *People* v. *Gay*, 7 N. Y. 378; *Jones on Ev.*, sec. 870; *Rapalje on Law of Witnesses*, p. 336, sec. 201, where the authorities are collected. We find no error in this ruling.

Nor do we find any in the third exception. The witness, Dorton, when asked if he knew the general reputation of Thayer in the community in which he lives for truth and veracity, replied that his knowledge of his reputation was confined to what it is, "among his business associates," and that he did not know it "as to his *general associates*." The Court held the witness was not qualified to testify as to his general reputation. The opinion of this Court in the case of *Sloan* v. *Edwards*, 61 Md. 102, is decisive of the matter. For errors pointed out in what we have said, the judgment must be reversed.

> *Judgment reversed with costs to appel-*
> *lant and new trial awarded.*

(Decided June 18th, 1902.)