FIDELITY MUT. LIFE INS. CO. OF PHILADELPHIA, PA., v. ZAPP.

(Court of Civil Appeals of Texas. Austin. Oct. 22, 1913.)

1. INSURANCE (§ 523*) — AMOUNT PAYABLE — DEDUCTION OF UNPAID PREMIUMS.

A life insurance policy provided for the payment of annual premiums on or before October 1st in each year for 20 years from October 1, 1895. Insured paid one annual premium, and on October 1, 1896, paid a quarterly premium, carrying the policy to January 1, 1897, at which time he paid an annual premium, receiving a receipt, stating that it paid his dues up to January 1, 1898. Thereafter and until

his death he continued to pay annual premiums each year on or about January 1st. In 1903 the company changed to a legal reserve basis, and sent to insured a certificate to be, and which was, attached to the policy, stating the benefits thereunder on that basis, which certificate stated that the policy years were to be counted from October 1, 1895, and to end October 1, 1915, and that all provisions of the policy inconsistent or in conflict therewith were thereby canceled. Insured died December 20, 1910. The policy provided for the deduction of the balance of the dues for the current year of insured's death. *Held,* that each policy year commenced on October 1st, and not on January 1st, and hence the company was entitled to deduct the balance of the premium for the year ending October 1, 1911, since if any doubt as to the date of the beginning of the policy year was created by the change in the time of paying the premiums, it was removed by the certificate mentioned.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1307, 1308; Dec. Dig. § 523.*]

2. INSURANCE (§ 599*)—PAYMENT OF LOSS—WAIVER OF OBJECTIONS TO MEDIUM OF TENDER.

Where an insurance company sent to a beneficiary under a policy a check for the amount due, which she retained without objection, except an unfounded objection that it was insufficient in amount, this constituted a sufficient tender, and prevented the recovery of interest.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1495, 1496; Dec. Dig. § 599.*]

Error to District Court, Fayette County; Frank S. Roberts, Judge.

Action by Mrs. Isolde Zapp, executrix, against the Fidelity Mutual Life Insurance Company of Philadelphia, Pa. Judgment for plaintiff, and defendant brings error. Affirmed in part, and reversed and rendered in part.

Locke & Locke, of Dallas, for plaintiff in error. C. D. Krause, of La Grange, for defendant in error.

#### Statement of Facts.

KEY, C. J. [1] The nature and result of this suit, and the controlling question and the facts relating thereto, are correctly stated as follows in plaintiff in error's brief:

"This suit was brought November 3, 1911, by Isolde Zapp, as executrix of the will of H. W. H. Zapp, deceased, against the Fidelity Mutual Life Insurance Company of Philadelphia, Pa., to recover $5,000 principal, interest at 6 per cent. from May 9, 1911, $600, penalties, and $560, attorney's fees, on a policy issued by said company on the life of said H. W. H. Zapp. The company admitted liability on the policy, but claimed that the amount due thereon was only $4,877.90, the difference of $122.10 consisting of the balance of the premium for the current year, and alleged that immediately after receiving, on February 9, 1911, proofs of the death of the said H. W. H. Zapp, it issued and transmitted on February 11, 1911, to the plaintiff by mail its check for said

sum in her favor drawn on the Real Estate Trust Company of Philadelphia, Pa., and that said check ever since had been retained by her. It offered upon the return of said check to pay said money into the registry of the court. The plaintiff acknowledged the receipt and retention of the check, but denied that she had accepted the same, and in her pleading offered to return it to the company. The controversy related to the deduction of $122.10 from the face of the policy, but on it depended the claim of the plaintiff to $600, penalties, and $560, attorney's fees. The case was tried by the court without a jury, and resulted in a judgment in favor of the plaintiff for $5,000 principal, interest from May 9, 1911, $600, penalties, and $560, attorney's fees, as prayed for. The defendant moved for a new trial, and upon the overruling of the same, prosecuted a writ of error to this court for the revision of the judgment.

"First assignment of error: The court erred in not rendering judgment in favor of the defendant.

"First proposition: The defendant was not liable under the policy for more than $4,877.90.

"Point 1: The policy provided for the deduction of the balance of the dues for the current year of the death of the insured.

"Statement: The promise of the defendant under the policy was to pay the sum of $5,000 'less the balance of the dues for the current year of the death of the insured, and any indebtedness of the member or beneficiary to' the company.

"Point 2: The current year of the death of the insured was the policy year, commencing October 1, 1910, and ending September 30, 1911.

"Statement: The provision of the policy regarding the payment of dues or premiums is as follows: 'The Fidelity Mutual Life Association of Philadelphia, Pennsylvania, in consideration of the application for this policy, which is made a part hereof, and a copy of which is hereto attached, and the payment to said association of sixty-nine and $80/100$ dollars for the mortuary and general funds, and eighty-six and $35/100$ dollars as an advance insurance fund, on or before the first day of October in every year, for the period of twenty years from October 1, 1895, does hereby,' etc.

"The policy is dated August 7, 1895. It also contains a provision as follows: 'A premium other than the above named will be accepted according to the association's table of rates, and the same will continue this policy in force for such time as may be mentioned in the receipt for such payment, which must be signed as aforesaid.'

"Shortly after the date of the policy, the insured paid to the defendant the sum of $4.13 as 'preliminary' dues until October 1,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

1895. On October 2, 1895, the insured paid the 'annual' dues of $171.15, due October 1, 1895, and carrying the policy to October 1, 1896. On October 1, 1896, the insured paid a quarterly premium of $40.70 carrying the policy to January 1, 1897. On December 10, 1896, the insured wrote to A. J. Brown, the defendant's agent at Dallas, Tex., as follows:

" 'Fayetteville, Texas, Dec. 10, 1896. Mr. A. J. Brown, Dallas, Tex.—Dear Sir: Can I pay you my premium for one year straight now from Jan. 1st? If not & I pay for the balance 9 mos. will you cr. me with the amt I had to over pay you for the last three mos. Consider my premium almost too high at regular rate & if i have to pay additional, am thinking seriously of dropping out of your co. when my time expires, please let me hear from you at your convenience oblige Yours truly, H. W. H. Zapp.'

"The defendant's agent replied on December 12, 1896, as follows:

" 'Dec. 12, 1896. Mr. H. W. H. Zapp, Esq. Fayetteville, Texas—Dear Sir: Replying to your inquiry will say that when your premium falls due on January 1, you can pay an annual premium of $156.15, or continue paying $40.70 per quarter. All insurance preminums are due yearly in advance, but when the insured elects to pay quarterly or semiannually, the interest is added to the quarterly or semiannual for the part not paid, which makes it larger for the year than paying an annual premium. If you pay an annual on the first of January, and afterwards want to fall back to quarterly payments, you can do so. Our company allows a policy holder to change his payments to suit his convenience. We think, upon examination, that you will not find any company that issues a policy of this kind at a lower rate than ours, considering the advantages of the policy. We inclose herewith some literature for your perusal. Yours truly, A. J. Brown, General Manager H.'

"On December 28, 1896, the insured wrote the defendant's agent as follows:

" 'Fayetteville, Texas, Dec. 28, 1896. Mr. A. J. Brown, Dallas, Texas—Dear Sir: Inclosed find M. O. for $156.15, amt. of dues for one year on my policy, please forwd. receipt oblige Yours truly, H. W. H. Zapp.'

"On December 29, 1896, the defendant's agent replied:

" 'Dec. 29, 1896. Mr. H. W. H. Zapp, Fayetteville, Texas—Dear Sir: Your favor of the 28th inst. inclosing P. O. order for $156.-15 in payment of annual premium on policy No. 061003, due Jany. 1. As we have a quarterly receipt for your policy, we will return it to the home office with your remittance, and request them to send you an annual receipt, direct from that office. Yours truly, A. J. Brown, General Manager.'

"The defendant issued to the plaintiff a receipt in form as follows:

"Face of Receipt: 'The Fidelity Mutual Life Association of Philadelphia, Pa. Philadelphia, 1—2—1897. Received from Herman W. H. Zapp, of Fayetteville, Tex., owner of policy No. 061003 one hundred fifty six 15-100 dollars in payment of annual dues, payable and due on the first day of January, 1897, which pays such dues up to the 1 day of Jan. 1898. (For terms of mutual agreement see application and policy.)

" 'Notice to Policy Holders. This receipt to be valid must be signed by the president and treasurer of the association and in exchange therefor cash or its equivalent be given by the holder of the policy on or before date payment is due. And when payment hereon is made to an authorized agent, such agent must countersign at the date of paying as an evidence of payment to him. O. C. Bosbyshell, Treasurer. L. G. Fouse, President.

" 'Countersigned at ——— on the ——— day of ———, 18———.

" '$156.15.      ———————, Agent.'

"Indorsed on face of receipt: 'Paid Jan. 2, 1897, Home Office. T. H. Eaton.'

"Thereafter, on or about January 1, 1898, January 1, 1899, and January 1, 1900, the insured paid to the defendant a premium of $156.15 and a receipt of substantially the same form as that set out above was executed and delivered to him. Similarly, on or about January 1, 1901, January 1, 1902, and January 1, 1903, the insured paid a premium of the same amount to the defendant, and a receipt, differing in that it omitted the date to which the policy was carried by the payment, but otherwise substantially the same, was executed and delivered to him. Under date of January 8, 1903, the defendant wrote to the insured as follows:

" 'Philadelphia, January 8, 1903. Guaranteed Certificate No. 061003. Mr. Herman W. H. Zapp, Fayetteville, Texas—Dear Sir: This company, as you are doubtless aware, changed to the legal reserve basis August, 1899, and since then your policy has been protected by the legal reserve. Inasmuch as the safety clause has been entirely eliminated thereby, we think it only right and proper that you should have a certificate to that effect and an explicit statement of guaranteed values, which we herewith inclose. Kindly attach the certificate to your policy and acknowledge receipt of same on the inclosed postal card. The premiums called for in the policy, which you no doubt know are much lower than usually charged for the same kind of a policy, will continue the same. Yours truly, Samuel B. Wylie, Actuary, per G. Enc. 2.'

"With said letter the defendant inclosed a certificate duly executed in form as follows:

" 'Age entry 38. Amount $5000. Legal reserve certificate to be attached to policy No. 61003. This is to certify that policy No. 61003, issued by the Fidelity Mutual Life As-

sociation of Philadelphia, now the Fidelity Mutual Life Insurance Company, on the 7th day of August, 1895, on the life of Herman W. H. Zapp, of Fayetteville, Texas, has been placed on the legal reserve basis, the company maintaining the full reserve required by law thereunder, and it is agreed that the insured under said policy, by and in consideration of the acceptance hereof, is guaranteed the following benefits:

" 'Premiums.—That the safety clause named in said policy is hereby annulled and canceled, and that said policy shall become full paid at the end of the premium-paying period, or *October 1, 1915.*

" 'Surplus.—The said policy shall, on *October 1, 1915,* share in the surplus contributed by policies of its class, according to its contribution to such surplus when its distributive share of same as determined by the company, shall be converted annually into reversionary dividend additions.

" 'Loan Value.—Within sixty days after receipt of written application, the company will grant, in conformity with its rules then in force, a cash loan, with interest in advance at a rate not exceeding six per cent per annum of the amount stated in the table below, corresponding to the number of completed policy years from October 1, 1895, to date of loan, provided that premiums have been duly paid to the anniversary of said date next succeeding the date when loan is made.

" 'Cash Value.—If the said policy and this agreement be legally surrendered on any anniversary of October 1, 1895, the company will pay as a cash surrender value the amount stated in the table below corresponding to the number of completed policy years, together with the distributive surplus (after the date mentioned in surplus clause) as then apportioned and the present worth of the dividend additions, less any loans thereon, or other indebtedness to the company.

" 'Nonforfeiture.—After premiums have been paid for three years from October 1, 1895, then, provided the policy be free from debt, upon the nonpayment of any subsequent premium when due, the insurance will be extended without participation in profits for the time stated in the table below, corresponding to the number of full years elapsed since said date, computed from the date of nonpayment of premium, or if said policy and this agreement be legally surrendered within three months from date such premium became due, the company will issue in exchange a full paid policy for the amount stated in the table below, corresponding to the same number of full years elapsed. [Here follows a table of the loan, cash and surrender values of the policy.]

" 'Reversionary additions proportionately increase the loan and cash values. Should any indebtedness exist values shall be diminished proportionately. Values for years not stated will be furnished on application.

Policy years are counted from October 1, 1895. All provisions of said policy inconsistent or in conflict with this agreement are hereby canceled.

" 'In witness whereof the Fidelity Mutual Life Insurance Company has caused the signatures of its president and treasurer to be affixed to this contract at its head office in the city of Philadelphia, attested by its secretary, this eighth day of January, 1903. L. G. Fouse, President. Attest: W. S. Campbell, Secretary. O. C. Bosbyshell, Treasurer.'

"On January 11, 1903, the insured received said letter and certificate attached, and attached said certificate to the policy in suit, and replied to the plaintiff as follows:

" 'Jan. 11, 1903. L. G. Fouse, President The Fidelity Mutual Life Insurance Co., Philadelphia. Dear Sir: This is to certify that I have received certificate guaranteeing the values on the legal reserve basis under my policy No. 061003 dated August 7, 1895, and that I have attached and filed the same with my said policy. Yours truly, W. W. H. Zapp.'

"Thereafter, on or about January 1, 1904, January 1, 1905, January 1, 1906, January 1, 1907, January 1, 1908, January 1, 1909, and January 1, 1910, the insured paid to the defendant a premium of $156.15, and the defendant executed a receipt of the form last above mentioned.

"In December, 1910, the defendant sent to the plaintiff a notice, reading substantially as follows:

"Face of notice:

" 'L. G. Fouse, President, F. X. Quinn, Treasurer. Philadelphia, Dec. 6, 1910. The annual premium on your policy *will be due Jan. 1, 1911,* payable to the Fidelity Mutual Life Insurance Company, at its head office, 112–114–116, North Broad street, Philadelphia, Pa.

Amount of Premium.................$156 15
Cash Due.........................$156 15

" 'Remit by bank draft, post office or express money order, payable to the Fidelity Mutual Life Insurance Company, the cost of transmission must be paid by the remitter.
" '_____.

" 'To Hermann W. H. Zapp, Fayetteville, Fayette Co. Tex. 061003—5. If payment called for in this notice is not made when due, the said policy, unless otherwise provided by its terms, will be void, and all payments thereon will become forfeited. A forfeited policy can be reinstated only upon execution of a revival contract, and approval of same by the company.'

"Printed across one end of notice: 'Bring this notice with you, or send it with remittance. See other side.'

"Back of notice:

" 'Notice to Policyholders.

" 'The sending of this notice is not a waiver of any forfeiture, and no payment made

in pursuance of it shall be valid if policy be not in force on due date stated herein, or if made to any person or agent other than designated herein, unless in exchange for receipt with the signatures of the president and treasurer affixed, and countersigned by the person to whom payment is made.

"'All premiums are due and payable at the head office of the company, unless otherwise directed in writing, but may be paid to an authorized agent or collector on or before the date when due, in exchange· for a receipt with the signatures of the president and treasurer affixed, to be countersigned by the authorized agent or collector to whom payment is made as evidence of such payment to him.

"'No agent of the company or any other person on behalf of the company has any power or authority to make or modify any contract of insurance, to grant credit or extend time for paying any premium or to waive any forfeiture or to bind the company by making any promise or by making or receiving any representation or information. Such powers can only be exercised in writing by the president, vice president, actuary, or assistant actuary of the company at its head office, and cannot be delegated.

"'Is your address as given on the reverse side correct? (Answer yes or no) If you fail to answer this question, we will assume that the address as it appears on the books of the company is correct. If you answer no, then give correct address on line below.

_____

"'(To be signed by the insured.)'

"The insured died December 20, 1910. The claim of the defendant is that the 'current year' of the death of the insured was the policy year from October 1, 1910, to September 30, 1911; that only one-quarter of this period, to wit, from October 1, 1910, to December 31, 1910, was paid for, and that the premium for the remaining three-quarters, to wit, $122.10, was proper to be deducted under the terms of the policy.

"'February 11, 1911. In re 0—61003—Zapp. Mrs. Isolde Zapp, Fayetteville, Texas. Dear Madam: We inclose our mortuary check No. 8711 for $4,877.90, payable to your order as temporary administratrix of the estate of Hermann W. H. Zapp, deceased, insured under policy 0—61003. The check is in settlement of claim for $5,000 from which we have deducted $122.10, balance of premium still due the company in order to complete the payments for the current policy year. Please see that the accompanying release receipt, properly dated, signed and witnessed, is, with the policy, attached to our check when same is forwarded through bank for collection, as the Real Estate Trust Company will not honor such check unless accompanied by both policy and receipt. Yours truly, J. R. Sykes, Assistant Treasurer.'

"The plaintiff's attorney replied as follows:

"'Law Office of C. D. Krause, La Grange, Texas. Feb. 27, 1911. Policy No. 61003, Hermann W. H. Zapp. The Fidelity Mutual Life Insurance Company, Philadelphia, Pa.—Gentlemen: Yours of February 11th, addressed to Mrs. Isolde Zapp, widow of the insured H. W. H. Zapp, together with inclosures, has been referred to me. Now, I cannot understand why you should deduct from the amount due on this policy, viz.: $5000, the sum of "$122.10, balance of premium still due the company in order to complete the payments for the current policy year," as I am in possession of all the receipts issued by your company to the insured, showing payments as follows: August 24, 1895: "Preliminary dues, payable and due on the 1st day of Aug. 1895, which pays such dues up to the 1st day of Oct., 1895, $4.13." Oct. 2, 1895: "Payment of· advance fee and annual dues, payable and due on the 1st day of Oct. 1895, which pays such dues up to the 1st day of Oct., 1896, $171.15." Oct. 8, 1896 (receipt from Home Office): "Payment of quarterly dues, payable and due on the first day of October, 1896, which pays such dues up to the 1st day of Jan. 1897, $40.70." And thereafter showing annual payments of premiums of $156.15 the last of which is dated "Head Office, Philadelphia, Pa. Dec. 28, 1909," and signed "L. M. Jones, Cashier," which was in payment for the premium due for the year from Jan. 1, 1910 to Jan. 1, 1911. Now I have advised Mrs. Zapp that, undoubtedly, an error has been committed by some one in the employ of your company, and that if the matter was drawn to your attention ·and explained, you would promptly rectify the error, and send her additional draft for the balance of $122.10, due her on the policy. I therefore ask that you at once take up this matter and forward to Mrs. Zapp or myself, additional draft for the $122.10, together with another receipt for Mrs. Zapp to execute in lieu of the one you have sent her, and as soon as same have been received, we shall forward same, together with the other draft, through bank for collection, accompanied by the policy, the receipt and receipts for premiums paid. Mr. Zapp, as you know, died on Dec. 20, 1910, eleven days before he should have had to pay another premium. Please take this matter up at once, and give it immediate attention. Yours very truly, C. D. Krause.'

"On March 5, 1911, the defendant answered:

"'March 6, 1911. In re 61003—Zapp.· Mr. C. D. Krause, La Grange, Texas—My Dear Sir: We are in receipt of your favor of the 27th ult. and replying would call your attention to the fact that this policy was issued with short term insurance from August 7, 1895, to October 1, 1895, which date becomes the anniversary date of the policy. You are possibly aware that all life insur-

ance premiums are calculated on an annual basis, and therefore, inasmuch as the premiums on this policy were only paid until January 1, 1911, three quarterly premiums of $40.70 each are still due this company in order to complete the current policy year. Our deduction of this amount is therefore proper, and no error has been made. Yours very truly, H. H. Fouse, for Supt. Claim Dept.'

"The plaintiff's attorney replied March 28, 1911, as follows:

"'March 28, 1911. Law Office of C. D. Krause, La Grange, Texas. In re 61003—Zapp. The Fidelity Mutual Life Insurance Company. Philadelphia, Pa.—Gentlemen: Replying to yours of the 6th inst. relative to above policy, I wish to say that I am fully aware that all life insurance premiums are calculated on an "annual basis," but inasmuch as this "annual basis" was changed in December, 1896, and you thereafter on Jan. 2, 1897, and thereafter regularly annually, issued your receipts to Mr. H. W. H. Zapp, the insured, showing that you at all times received and accepted "annual premiums" on this policy on the 1st day of January of each year, I contend that you have changed the "annual basis" or "anniversary date" for the payment of premiums to January 1st, and inasmuch as Mr. Zapp died on December 20, 1910—eleven days before such annual premium became due for the year 1911—and your call upon him for payment of this premium reads "The annual premium on your policy will be due Jan. 1, 1911"—I shall insist upon the payment by your company to the beneficiary of the balance of $122.10, deducted by you when you sent the draft. Should you fail to make prompt remittance for this balance or fail to send draft covering the whole amount due, $5000 in lieu of the draft sent, I shall, after the expiration of ninety days after the receipt by you of the proofs of death, of which you acknowledge receipt of Feb. 9th, 1911, file suit against your company for the whole amount due upon the policy, for the twelve per cent damages upon the policy, for the twelve per cent damages on the amount thereof, and ten per cent attorneys fees for the prosecution and collection of the claim as provided in art 3071 of our Civil Statutes. I shall await your action until April 15th, 1911, and if by that time the matter has not been satisfactorily settled will bring suit as stated. I trust you will see the justness of my contention, and make prompt remittance. Yours very truly, C. D. Krause.'

"The defendant responded on April 4, 1911, as follows:

"'April 4, 1911. In re 61003—Zapp. Mr. C. D. Krause, La Grange, Tex.—My Dear Sir: Your letter of the 28th ult. regarding settlement of claim under the above numbered policy has been received and contents noted. Replying would say that the time and manner of payment of premiums has nothing whatever to do with the anniversary date of the issuance of the policy. That remains fixed throughout the life of the policy. This policy was issued August 7th, 1895, with a provision for two months term policy to October 1st, 1895, and provided for the payment of twenty annual premiums on the first day of October of each year, or in lieu thereof quarterly or semiannual premiums as provided by the terms of the contract. The anniversary, therefore, has been at all times October 1. Under your construction, if the anniversary date has been changed, then the insured would lose the benefit of the one-quarter premium which was paid the second year, and had the policy continued in force would have been required to pay twenty full years' premiums, in addition to such one-quarter premium. Such construction is so obviously incorrect that you have doubtless overlooked this situation in the assertion of your present claim that the anniversary date was changed. I trust that upon further consideration you will see that the deduction of $122.10, being the remaining quarterly premiums for the policy year beginning October 1st, 1910, is entirely proper, and that by permitting the insured to pay one quarterly premium and thereafter annual premiums the company did not increase the obligation of the insured to pay more than twenty annual premiums, or change its own rights to deduct the unpaid portion of the premium for the current contract year. Yours very truly, F. H. Calkins, Supt. Claim Dept.'

"It was admitted by the plaintiff in open court that there was no communication, either oral or written, between the plaintiff, or any one in her behalf, and the defendant since the letter of April 4, 1911, just copied, and prior to the filing of the suit seven months afterwards, November 3, 1911.

"No objection was made to the defendant, except such objections as are set forth in the foregoing letters; and such letters are the only communications of any kind that passed between the plaintiff, or any one representing her, and the defendant from the death of the insured until the institution of the suit. The check was never returned or offered to the company prior to the date of trial, December 22, 1911."

### Opinion,

1. On the foregoing facts, which are undisputed, we hold as matter of law that the beginning of each policy year on the policy in question was October 1st; and as only a portion of the premium for the current year of Mr. Zapp's death had been paid, the insurance company had the right, by the terms of the contract, to deduct the unpaid portion of the premium for that year, which left, as contended by plaintiff in error's counsel, only $4,877.90 due upon the policy. That the 1st day of October of each year was intended as the beginning of each premium or policy

year is reasonably certain from the terms of the original contract; and, if the subsequent conduct of the parties raised any doubt upon that subject, such doubt was removed by the supplemental contract, which distinctly stated that the policy years were to be counted from October 1, 1895, and to end October 1, 1915; and then, to remove all possible doubt, it was distinctly stated: "Policy years are counted from October 1, 1895. All provisions of said policy inconsistent or in conflict with this agreement are hereby canceled."

[2] 2. We also sustain plaintiff in error's contention that its prompt sending of a check for $4,877.90, and defendant in error's retention of the same without objection, except that it was insufficient in amount, constituted a sufficient tender of the sum due, and therefore defendant in error was not entitled to recover interest. That proposition is supported by reason and justice, and, in the main, by the following authorities cited by counsel for plaintiff in error: Greenleaf on Evid. § 601; Bonaparte v. Thayer, 95 Md. 548, 52 Atl. 496; Walsh v. St. L. Exposit. & Music Hall Ass'n, 101 Mo. 534, 14 S. W. 722; McGrath v. Gegner, 77 Md. 331, 26 Atl. 502, 39 Am. St. Rep. 415; Ricketts v. Buckstaff, 64 Neb. 851, 90 N. W. 915; Mitchell v. Vermont Copper Mining Co., 67 N. Y. 280; Shay v. Callanan, 124 Iowa, 370, 100 N. W. 55; Hidden v. German Savings & Loan Co., 48 Wash. 384, 93 Pac. 668; Gradle v. Warner, 140 Ill. 123, 29 N. E. 1118; Polglass v. Oliver, 2 Cromp. & J. 14; Boothroyd v. Board of Com'rs, 43 Colo. 428, 97 Pac. 255; Thompson v. St. Charles Co., 227 Mo. 220, 126 S. W. 1044; Bessling v. Hoyle & Bro., 1 Tex. App. 117; Beatty v. Miller, 47 Ind. App. 494, 94 N. E. 897.

3. As the right to recover the statutory penalty and attorney's fees is dependent upon refusal to pay the amount due, after demand has been made therefor, and as plaintiff in error promptly tendered the amount that was due before any such demand was made, it necessarily follows that defendant in error was not entitled to recover any penalty or attorney's fee.

4. For the reasons above stated, the judgment of the trial court, awarding to the plaintiff $600 interest, $600 as a penalty, and $560 as attorney's fees is reversed and set aside, and the balance of the judgment is reformed so as to reduce the total amount of recovery to $4,877.90, to bear interest at the rate of 6 per cent. per annum from December 21, 1911, the date of the judgment rendered by the trial court, and as thus changed the judgment referred to is affirmed. But the judgment so affirmed in favor of the plaintiff is not to be enforced until she has returned to the defendant the check delivered by the latter to her for the sum of $4,877.90.

Reversed and rendered in part and in part affirmed.