#### In re CAPLAN et al.

District Court, D. Maryland. December 2, 1927.

No. 4862.

Bankruptcy ☞191(1)—Distraint for rent held, under terms of tenancy, not to create lien against trustee of lessees (Code Pub. Gen. Laws Md. 1924, art. 21, § 1).

Where, under Code Pub. Gen. Laws Md. 1924, art. 21, § 1, a lease for 10 years was invalid for want of record, but entry thereunder creates a tenancy from year to year, and the lease is admissible to define the terms of the tenancy, a broad provision in the lease in such case, requiring lessor to give notice by registered mail of any default, and giving lessees 10 days thereafter to remedy the default before any of the remedies under its provisions might be resorted to, governs. The rights of the parties, and a distraint for rent, without such formal notice, *held* not to create a lien as against the trustee in bankruptcy of lessees.

In Bankruptcy. In the matter of Daniel C. Caplan and Solomon Rudolph, individually and as copartners, as Caplan & Rudolph, bankrupts. On exceptions to order of referee. Affirmed.

See, also, 23 F.(2d) 680.

W. Conwell Smith, of Baltimore, Md., for petitioner.

Musgrave, Bowling & Hessey, of Baltimore, Md., for master.

WILLIAM C. COLEMAN, District Judge. The question here is as to the validity of a distraint lien with respect to the proceeds of sale of the bankrupts' goods in the hands of the receiver. The case arises upon exceptions to the findings of the referee. The facts are not in dispute. On March 5, 1925, the Tri Plex Shoe Company of Philadelphia leased to the bankrupts the premises at 22–24 East Baltimore street, Baltimore, for 10 years at a designated rental. The lease contains a number of covenants which are not material to the present controversy. In addition there is this covenant: "(e) It is further covenanted and agreed that if the rent or any portion thereof shall not be paid when and as same become due and payable, the lessor may distrain therefor and if the same shall remain unpaid for a period of fifteen (15) days, the lessor may, at its option, enter into the demised premises by force or otherwise and repossess itself of the premises and cancel and annul this lease, employing attorneys, if necessary, which expense shall be paid by the lessees." The last covenant is as follows: "(j) It is further agreed and understood before the lessor shall have the right to exercise any of the remedies in the aforegoing clauses, that it shall send by registered mail, a written notice to the lessees, addressed to them at their main office, 425 East Baltimore street, Baltimore, or to such other place as may be designated from time to time by the said lessees as their main office, advising them of any default or breach, and the lessees shall have ten (10) days in which to rectify or remedy such default or breach, and if remedied within ten (10) days, this lease to continue in full force and effect."

The lessees were continually behind in their rent payments from August, 1926, until December 22, 1926, when petitioners levied a distraint. There was at this time $1,103.85 due. On December 23, 1926, an involuntary petition in bankruptcy was filed against the lessees, and adjudication followed on January 7th. The present petition was thereupon filed praying that the distraint lien be transferred to the proceeds of any sale of the bankrupts' goods in the hands of the receiver. The matter was referred to the referee, who found that the lease was invalid by reason of there being no recording as required by article 21, § 1, of the Maryland Code; that under Maryland law, however, the lease was admissible as evidence to show what terms should be applied to the tenancy created by possession and payment of rent under the agreement; that clause (e) above set out was limited by the final clause (j); that no notice had been given as required by (j); and, finally, that the distraint was therefore premature. The referee accordingly recommended that the petition be dismissed.

The petitioner excepted to the findings of the referee, (1) that the lease required the landlord to give notice of intention to distrain as provided in covenant (j); and (2) that such notice had not been given.

Under article 21, § 1, of the Maryland Code, governing leases for more than seven years, there can be no doubt but that the lease itself is entirely inoperative to pass any estate. Falck v. Barlow, 110 Md. 159, 72 A. 678, 17 Ann. Cas. 538, and cases cited. Entry under such an invalid lease, however, creates a tenancy from year to year. Falck v. Barlow, supra. See, also, Bonaparte v. Thayer, 95 Md. 548, 52 A. 496.

It further seems settled under the law in Maryland that a lease which is invalid under the above-mentioned statute is nevertheless admissible in evidence to define the terms of the tenancy created by possession. Emrich v. Union Stockyards, 86 Md. 482, 38 A. 943. As was said in this case (page 485 [38 A. 943]): "It was conceded that the failure to record the lease made it invalid as a lease as to third parties, but still it was admissible in evidence for the purpose of showing the terms of the tenancy implied by law in the absence of a valid written lease." This seems in accord with the weight of authority, as is said by Mr. Tiffany, Landlord & Tenant (1910 Ed.) § 25: "The application of the doctrine in these various cases [English] shows that its applicability is not, in the case of a lease within the statute of frauds, in any way dependent, as has been suggested, upon the provision of the statute that the lease shall have the effect of creating an estate at will. The view thus asserted in England to the effect that, if the lessee enters by reason of the invalid lease, the terms of the tenancy are regulated by the language of the lease, has been not infrequently reiterated in this country."

The lease being, therefore, admissible, it seems that the referee was correct in concluding that the broad terminology of clause (j) covered the distraint, as well as the other covenants, thereby requiring the landlord to give the specified notice. That clause provides that "before the lessor shall have the right to exercise *any* of the remedies in the *aforegoing clauses*" notice by registered mail shall be given to the lessees, "advising them of any default or breach, and the lessees shall have ten (10) days in which to rectify or remedy such default or breach, and if remedied within ten (10) days this lease to continue in full force and effect."·

As pointed out by the referee, if it had been intended by the parties to exempt the right of distraint from operation of this clause, it would have been a very simple matter to do so. To say that the special form of notice should be interpreted as intended to apply, not to the mere starting of the distraint proceedings, but to a sale thereunder, is to draw a distinction finer than is within a reasonable interpretation of the word "remedies" as used in this clause. In other words, the remedy is begun or exercised when distraint proceedings are commenced; it is completed if by subsequent sale the landlord recovers the amount of the unpaid rent.

Turning now to the question of fact as to whether or not the requisite notice was given, it seems clear that it was not. It is true a letter was sent, by registered mail, to the bankrupt lessees on August 3, 1926, by petitioner, but this letter related only to a question of taxes. Nor can any of the other correspondence between petitioner and the bankrupt lessees be construed as satisfying the requirements of clause (j) of the lease, or as amounting either to a waiver of, or compliance with, these requirements. Petitioner argues that since the lessees' default under the lease had been so notorious and continuous, and since petitioner's numerous letters throughout the period from August until December, 1926, and the lessees' replies thereto, evidenced such default, it was unnecessary to require or to expect a literal compliance with clause (j) of the lease, because that imposed only a requirement to give notice of default.

However, in none of the correspondence is there any notification that distraint would be resorted to, and this the lessees were entitled to, as well as the opportunity which clause (j) afforded them of rectifying or remedying their default or breach within ten days. The fact that they might not have been able or willing to rectify or remedy such default or breach is beside the question. It can no more be said that the lessees waived their right to notice by their delay than it can be said that the landlord, by his tolerance, waived his right to distrain. The landlord having been lenient for several months, the tenants were entitled, under the aforementioned clause of the lease, to receive in the specified formal way a final ultimatum from their landlord, and to be given the 10 days' interval in which to make an effort to meet their overdue obligations.

The court, therefore, feels that the referee was correct in his findings, and the petition excepting thereto is accordingly dismissed.