HELEN A. MULLEN *vs.* EASTERN TRUST AND BANKING COMPANY.

Penobscot.    Opinion December 4, 1911.

*Mortgages.   Bonds.    Trustees.    False Certification.    Liability of Trustee.    Deceit*
*by Trustee.    Measure of Damages.*

In an action of deceit against a defendant trust company, trustee in a trust
   mortgage, for falsely certifying an overissue of bonds, two of which of the
   par value of $500 each were purchased by the plaintiff from the mortgagor,

*Held:*  1.   That it is sufficient if the plaintiff prove that the defendant made
   false representations, with the intent that the plaintiff as one of the pur-
   chasing public should rely and act upon them, or in such a manner as
   would naturally induce her to act upon them, that the representations
   were material, that being matters susceptible of knowledge, they were
   made as of facts of its own knowledge, that the plaintiff was induced
   thereby to purchase an invalid and worthless bond and that she was
   deceived and injured.   Wilful fraud need not be proved.

2.   That the certificate in this case to the effect that "the undersigned,
   trustee, named in the within bond and in the mortgage therein referred
   to, hereby certifies that said mortgage has been delivered to it as trustee
   and this bond is one of a series of one hundred bonds secured thereby"
   was untrue in fact, as no mortgage had ever been delivered to the trustee
   to secure these bonds in question and there was no series of one hundred
   bonds secured by any mortgage whatever.   The valid series secured by the
   trust mortgage consisted of only ninety bonds.

3.   That it is the duty of the certifying trustee to ascertain the facts, as its
   certificate is no merely formal matter but goes to the very essence of each
   bond.   It guarantees not the value or sufficiency of the property behind
   the bond, but the validity of the bond itself as a legal instrument and the
   fact that it is secured by the trust mortgage.   It makes false certificates at
   its peril.

4.   That, it appearing that the certificate was false in fact and that the plain-
   tiff relied upon the certificate in purchasing the bond, she is entitled to
   recover in this action.

5.   That the measure of damages is the difference between the value of the
   bonds in question at the time of purchase and their value if they had been
   as represented.   Being one of ten unauthorized and overissued bonds
   they were invalid and worthless.   The evidence shows that if they had

been as represented they would have been worth par in the market at that time. The plaintiff paid par for her bonds and other bonds were sold at or about the same time at the same price. The fact that the company became insolvent and passed into the hands of a receiver seven years after these bonds were issued, and that the holders of valid bonds who kept them till that time received only fifty-eight per cent in final settlement does not outweigh the estimate put upon the value of the bonds at the time and shortly after their issue.

On report. Judgment for plaintiff.

Action of deceit against the defendant corporation, the trustee in a certain trust mortgage given to it by the Ounegan Woolen Company, a corporation, for falsely certifying certain bonds, purporting to have been issued by said Woolen Company, as secured by said mortgage.

Plea, the general issue with brief statement alleging as follows:

"1. That it never declared to the plaintiff nor to any one representing her, that it was the owner or holder of the two bonds referred to in plaintiff's writ and which plaintiff declares were purchased by her of said defendant, and that it did not request the plaintiff to purchase said bonds of it.

"2. That the plaintiff did not bargain with the defendant to buy of it nor did the plaintiff buy of the defendant the said two bonds, upon the terms or in the manner alleged, and the defendant denies that plaintiff paid it one thousand dollars, or any other sum, for said two bonds as plaintiff alleges she did."

At the conclusion of the evidence, the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Joseph F. Gould*, for plaintiff.

*E. C. Ryder*, for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

CORNISH, J. Action of deceit against the defendant, the trustee in a certain trust mortgage, for falsely certifying certain bonds as secured thereby.

This raises the question, novel in this state, as to the legal liability of a banking corporation in certifying trust bonds.

It appears in the case at bar, that the stockholders of the Ounegan Woolen Company on August 3, 1899, voted to authorize the directors "to raise funds for the use of the Company by the issue of bonds to an amount not exceeding fifty thousand dollars, to be secured by mortgage upon the mill property of the Company, the rate, time and all unspecified details of the bonds and mortgage to be left with the directors."

On August 22, 1899, the directors in pursuance of this authority from the stockholders voted "to issue ninety bonds of the denomination of five hundred dollars each, all payable to the Eastern Trust and Banking Company, trustee, or bearer, in ten days from the date thereof, dated September 1, 1899, &c." The mortgage provided that a certificate of the following tenor signed by the trustee should be endorsed upon each bond.

### "Trustee's Certificate."

"The undersigned, trustee named in the within bond and in the mortgage therein referred to, hereby certifies that said mortgage has been delivered to it as trustee, and this bond is one of the series of ninety bonds secured thereby.

Eastern Trust & Banking Company, Trustee.

By                                    Secretary."

Each bond also provided as follows;

"This bond shall not become obligatory until it shall have been authenticated by certificate endorsed hereon of said Eastern Trust and Banking Company, Trustee, above named."

The mortgage was duly executed, the ninety bonds of five hundred dollars each, numbered from one to ninety, and aggregating $45,000 were duly executed by the officers of the Woolen Company, duly certified by the trustee and sold. No question is raised as to the validity of these bonds or of the trust mortgage securing them.

Later, ten other bonds, each of the par value of five hundred dollars, numbered from 91 to 100 inclusive, and in all respects like the original ninety, except that they purported to be of a series of one hundred bonds, were placed upon the market. They were duly signed by the officers of the Woolen Company and on the back of each was the following certificate signed by the defendant.

## "TRUSTEE'S CERTIFICATE."

"The undersigned, trustee, named in the within bond and in the mortgage therein referred to, hereby certifies that said mortgage has been delivered to it as trustee and this bond is one of the series of one hundred bonds secured thereby.

Eastern Trust & Banking Company, Trustee.

By G. B. Canney, Secretary."

The plaintiff, through her husband, as her agent, in November, 1901, purchased two of these bonds, Nos. 93 and 94, from A. H. Brown who was the Treasurer of the Woolen Company and also Manager of the Old Town branch of the Eastern Trust and Banking Company.

Interest was paid upon these spurious bonds during five years, the last coupon being met on September 1, 1906. Soon after that time the Woolen Company became insolvent and its affairs were settled up by the defendant as receiver. It was then that the plaintiff was informed of the overissue and discovered that her bonds were void and she made demand upon the defendant for repayment the last of December, 1906.

The plaintiff introduced evidence to show that in the sale of the bonds, Mr. Brown was acting for the Trust Company and not for the Woolen Company, but we deem this contention immaterial. The basis of recovery is the false representation contained in the trustee's certificate and whether the purchase was made directly from the trustee or from the Woolen Company cannot affect the rights of the parties.

What duty did this trustee owe to the purchasing public in certifying these bonds and has there been a breach of that duty?

It is apparent that such certificate is no merely formal matter. It goes to the very essence of each bond and no bond is binding until it is thus authenticated. The certificate is the royal stamp that makes it not only current but valid. Its purpose is to guarantee, not the value or sufficiency of the property behind the bond, but the validity of the bond itself as a legal instrument and the fact that it is secured by the trust mortgage. It is made with the full understanding and expectation that it is to be acted upon and relied upon by all would be purchasers, and therefore it is the duty of the trustee to ascertain the truth of the facts to which it certifies. It makes false statements at its peril. All the necessary sources of information are accessible to it and it is compensated for its services. In this case the fee was one hundred dollars for certifying the ninety bonds. Under these circumstances the responsibility rests upon the trustee to authenticate no bond that should not be authenticated and to ascertain that all the statements in the certificate are true in fact.

It cannot be denied that the certificate on the two bonds in suit was untrue. No mortgage had ever been delivered to the trustee to secure these bonds and there was no series of one hundred bonds secured by any mortgage whatsoever. Their issue had never been authorized by the directors. All these facts could have been ascertained, and the invalidity of the bonds have been established by a slight examination of the Woolen Company's records on the part of the defendant. Instead, its approval and guaranty are endorsed upon the bonds and the purchasing public are thereby misled to their damage. What element of false representation, within the legal meaning of that term is lacking? We see none. Mr. Mullen, the plaintiff's agent, testified that before making the purchase, he examined the trustee's certificate upon the bonds and would not have purchased them except for that certificate. Wilful fraud need not be proved. It is sufficient if the plaintiff prove that the defendant made false representations, with the intent that the

plaintiff as one of the purchasing public should act upon them or in such a manner as would naturally induce her to act upon them, that the representations were material, that being of matters susceptible of knowledge, they were made as of a fact of its own knowledge, that the plaintiff was induced thereby to purchase an invalid and worthless bond, and that she was deceived and injured.    This is the accepted rule in this State.    *Braley* v. *Powers*, 92 Maine, 203; *Atlas Shoe Co.* v. *Bechard*, 102 Maine, 197; *Banking Co.* v. *Cunningham*, 103 Maine, 455.    All these requirements, the plaintiff in the case at bar has met and her right of action is clearly established.

The learned counsel for the defendant contends that even if the trustee is prima facie liable, that liability is limited by the express stipulation in the trust mortgage that "the trustee may act by agents or attorneys and shall not be responsible for their acts or omissions, but shall be bound to use due care in their selection and retention." This provision was not intended to refer in any way to the act of the trustee in authenticating the bonds.    It is found in the article which prescribes the duties and powers of the trustee if it takes possession of and manages the trust property in case of foreclosure proceedings or any breach of the conditions of the mortgage.    It has no application to and therefore in no way limits or affects the responsibility of the trustee in certifying the bonds to secure which the mortgage was primarily given.    This view is confirmed by the provision in the latter part of the same article that prior to its being called upon to take possession of the property, "its sole duty is confined to certifying the bonds as of the series mentioned herein." The breach of this last duty is the cause of complaint here.    The cases cited by the learned counsel for the defendant are in harmony rather than in conflict with the conclusion here reached.

In *Bauernschmidt* v. *Maryland Trust Co.*, 89 Md. 507, 43 At. Rep. 790, the certificate was true in fact, because the bonds certified were a part of the legal series and were secured by the mortgage, but the plaintiff contended that the certificate went further and constituted in effect a warranty of the sufficiency of the mortgaged

premises, and guaranteed not only that the bonds were legally and formally but financially and actually secured by the mortgage.  The court of course refused to so hold.  The opinion concedes all the liability which the plaintiff in the case at bar invokes.

"It was not contended in this case, nor do we suppose it could be successfully contended, that the certificate here relied on can be construed as constituting a warranty of the sufficiency of the mortgaged premises as security for the bonds mentioned in the mortgage.  .  .  .  .  The certificate identifies the bonds on which it is placed as one of the series of bonds mentioned and described in the mortgage, and that it was secured by mortgage.  .  .  .  .  But it has never been understood here, or elsewhere, so far as we are informed, that a trustee, under a mortgage like the one before us, creating, as it does, a mere trust to certify the bonds, did more by the form of certificate adopted than to thereby identify them as the bonds of the company which the mortgage was executed to secure."

In *Tschetinian* v. *City Trust Co.*, 186 N. Y. 432, the certificate read "this bond is one of a series of bonds numbered and described in the mortgage referred to."  This was true in fact but the plaintiff claimed that this certificate was comprehensive enough to guarantee that they were first mortgage bonds, the mortgagor having endorsed "First Mortgage Bond" on the back of each.  The court held, however, that the certificate simply identified the bonds and assured the purchaser that they were entitled to the benefits afforded by the mortgage, but did not guarantee the nature or the extent of the security.  The distinction is clearly made in the opinion in these words:

"The language employed when interpreted in its natural and ordinary meaning simply amounts to a statement identifying the bond whereon it is written as one of those mentioned in the mortgage and the effect of this is an assurance to the purchaser that his bond is amongst those entitled to the benefit and protection afforded by such mortgage.  But the statement does not upon any reasonable construction in the absence, as in this case, of any allegation of fraud or deceit active or passive, make the trustee a guarantor of

the quality and extent of the security given by the mortgage or responsible for the accuracy of statements indorsed by the mortgagor purporting to describe the nature of such security."

It remains to consider the question of damages. We see no reason why the ordinary rule adopted in this State and Massachusetts should be departed from, viz., the difference between the value of the bonds in question at time of purchase and their value if they had been as represented. *Wright* v. *Roach*, 57 Maine, 600; *Thoms* v. *Dingley*, 70 Maine, 100; *Whiting* v. *Price*, 172 Mass. 240.

The first element is fixed. They were worthless because void. What does the evidence show they would have been worth at that time if as represented? The price at which they sold has probative force. *Norton* v. *Willis*, 73 Maine, 580. The plaintiff paid par for her bonds and Mr. Cassidy the president of the company took six of them aggregating $3000 at the same figure, assuming that they were valid. This is strong evidence of what the bonds were worth at that time. Moreover interest continued to be paid upon them for five years after their purchase, tending to show that the financial condition of the company continued sound for a considerable period at least.

The only evidence tending to diminish the value is the fact that finally the company became insolvent and had the bonds been valid and had the plaintiff seen fit to keep them she would have received on receivership settlement only fifty-eight per cent of the face value. Subsequent events may be introduced as throwing light back upon a previous condition but their value depends upon their nearness to the principal event, and the fact that a manufacturing corporation, whose success is so largely a matter of personal management and of general business conditions, is obliged seven years after bonds are issued to pass into the hands of a receiver, ought not to outweigh the estimate put upon the value of those bonds at the time or shortly after their issue, by shrewd business men who should have been acquainted with the exact situation. Upon the evidence in this case we think it fair to conclude that in November 1901, when

these bonds were purchased the valid five per cent bonds of the Woolen Company were worth par, and as those belonging to the plaintiff were worthless, the entry should be,

*Judgment for plaintiff for $1000 and interest from January 1, 1907.*