# ALEXANDER KREMEN

## vs.

## LOUIS RUBIN ET AL.

*Assumpsit—Money Paid Under Contract—Sale of Land—Justification for Purchaser's Rescission—Payment for Mortgage—Evidence and Instructions.*

If one party to a contract has received money in consideration of its performance, and then fails or refuses to perform it, the other party may either sue for the breach, or may rescind the contract and sue in an action for money had and received to recover the amount paid.                    p. 689

A purchaser of real estate, upon the refusal or inability of the vendor to convey, may bring an action of general assumpsit on the common counts to recover so much of the price as has been paid by him.                    p. 690

Evidence that the price which plaintiffs agreed to pay defendant for certain property was substantially higher than the price at which the real owner of the property had authorized the defendant, as broker, to sell it; that defendant told plaintiffs and the owner that this difference in price was to cover the expense of securing a mortgage; that thereafter plaintiffs demanded of defendant a much larger sum as a bonus for securing the mortgage, and refused to "put the deal through" unless this was paid, *held* to justify plaintiff in rescinding the contract.                    pp. 687, 691

In an action to recover money paid by plaintiffs under a contract for the purchase of property, which defendant failed to perform, the contract itself was admissible to explain the purpose and objects of the payments made by plaintiffs.  p. 691

In view of the ambiguity as to the relation which defendant bore to plaintiffs, and as to the character and capacity which he assumed in receiving the money paid by them, evidence as to defendant's relations to the property and its owner, as to

the contract between them, and defendant's subsequent purchase of the property from such owner, was admissible. p. 691

That a witness has been indicted is not admissible to impeach his credibility. p. 692

That defendant's eventual purchase of the property was at the insistence of the owner, that he subsequently resold it, or that he paid a bonus to procure the purchase money, was not relevant to the question whether his refusal to convey the property to plaintiffs gave the latter, under the circumstances of the case, the right to rescind the contract of sale to plaintiffs.

p. 692

Defendant having apparently signed the contract of sale to plaintiffs in his individual capacity, but there being testimony that he was acting for the actual owner and also for plaintiff purchasers, it was proper to ask him for whom he acted when he signed the contract. p. 692

An objection to the refusal of a prayer constituting a demurrer to the evidence is waived by plaintiffs' subsequent introduction of testimony. p. 693

Where a contract of sale provided that part of the purchase price should be secured by mortgage to be procured at the purchasers' expense, without any statement as to the terms of the mortgage or the amount to be paid for procuring it, and subsequently, in consideration of his having charged for the property more than good faith in the discharge of his duties as agent for the real owner required, and of the payment by the purchasers of a small additional sum, he agreed to procure the necessary mortgage, such agreement, as being supported by a sufficient consideration, superseded to that extent the indefinite language of the original contract. p. 694

That a granted prayer assumed a number of facts cannot be considered on appeal if no objection on that ground was made below. p. 694

In an action for money had and received, it was proper to refuse a prayer which directed a verdict for plaintiffs without requiring the jury to find that defendant received any of the money sued for, he having denied receipt of part thereof.

p. 694

684          KREMEN vs. RUBIN.

That a real estate broker selling property received a part of the purchase money from the vendee, that the broker afterwards bought the property himself, and that he failed to return the payment made by such vendee, do not entitle the latter, in an action for money had and received, to recover the money so paid, without regard to whether the first contract was rescinded by mutual consent or was broken by the original vendee, or whether there was any relation of principal and agent between the broker and the vendee.                    p. 695

*Decided January 10th, 1922.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by Louis Rubin and Rose Rubin against Alexander Kremen to recover money paid under a contract for the purchase of real estate. From a judgment for plaintiffs, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, and OFFUTT, JJ.

*David Ash,* with whom was *Harry T. Kellman* on the brief, for the appellant.

*Clifton S. Brown,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

This case arises from a dispute between the parties as to the terms of a contract made by them for the sale of leasehold property, known as 14 N. Chester Street, in Baltimore City, by the appellant to the appellees for $7,200. Under the contract, $6,000 of the purchase price was to remain as a debt against the property to be secured by a mortgage. The appellant's contention was that a mortgage could only be secured by paying a bonus of $650, and that under the contract of sale that expense should have been paid by the appellees in

addition to the purchase price, while they, on the other hand, contended that the only expense which they were required to bear, over and above the amount of $7,200, was $52, for which amount they say the appellant agreed to procure the necessary mortgage loan. In consequence, the appellant refused to consummate the transaction unless the appellees paid the $650 bonus, in addition to the price of $7,200, and that the appellees refused to do.

Before the dispute arose the appellees had paid the appellant $700 on account of the purchase price of the property, and, when he failed to convey it to them, they demanded the return of that money, and when the appellant refused to return it they brought this action for its recovery.

The action is in assumpsit, and the declaration originally contained only the six common counts. It was later amended by the addition of a special count, but, at the conclusion of the plaintiff's testimony, it was again amended by striking out that count, so that the case rested finally upon the declaration in the form in which it was originally filed.

Sixteen of the eighteen exceptions which we are asked to review relate to questions of evidence, and the other two to the court's rulings on the prayers. Before discussing them, we will refer to so much of the evidence as is necessary to an understanding of the questions which these exceptions present.

From the plaintiff's evidence it appeared that, on January 26th, 1920, Alexander Kremen sold to Louis Rubin and Rose Rubin, his wife, the property to which we have referred, and which was then owned by Morris Libauer, for $7,200. The contract of sale, which was written by Mr. Kremen, and signed by the parties, provided in part as follows:

"Nine hundred dollars cash, of which $500.00 should be paid February 10th and balance at day of settlement and balance in mortgage expense for procuring same should be paid by vendee.

"And upon payment as above of the unpaid purchase money, a deed for the property shall be exe-

cuted at the vendee's expense by the vendor, which shall convey the property by a good and merchantable title to the vendee.

"Taxes, water rent, ground rent, to be paid or allowed for by the vendor to the day of transfer, nineteen hundred and

"Settlement should take place within four months from date hereof."

When asked for whom he was acting when he signed that contract, Kremen said: "For myself—I was acting for myself as agent for Mr. Libauer."

Rubin, after he had paid $700 on account of the purchase price of the property, learned that Kremen was to get it from Libauer for $7,000. He then, he said, went to Kremen and said to him: "Listen here, you were supposed to charge me $7,000. Mr. Libauer is really selling me the property, and you are acting as agent, and now you charge me $7,200." And he said that Kremen replied: "I will tell you, I promised to get you the mortgage for nothing * * * now, I will get you the mortgage of $4,500" and then he said, "the second mortgage of $1,500, and only to cost you $52, and the rest of the expenses I will stand. This is just the reason I charge you these $200 and sold you the property for $7,200—this $200 will practically be a bonus for securing the mortgages." The appellee told Kremen he could only spare $1,200 in cash; that he only had $1,000 of his own, but that his mother intended to give him $200, which made up the amount of cash he agreed to pay. When the time came to settle for the property, Rubin, his wife, Mr. Weinberg, his attorney, and Mr. Heller, a friend, went to Kremen's office. When he arrived there Mr. Kremen told him that every one was there ready to settle for the house but he had not secured the mortgage, but that a man named Blum would lend him $5,000 on a first mortgage to run for one year and that he could secure a second mortgage for the balance, but that Rubin would have to pay $650 as a bonus for securing the mortgages. Rubin then

asked if the mortgage could not remain on the property for a
longer time, so as to give him an opportunity of paying it
off.    He was told that that could not be done and he then
said: "I can't go ahead and settle the property.    First, I
have not got the money, I can't get the amount of $650, and
then I say, in a year, what could I do in a year's time, $5,000
in one year.    He said, 'that is the only way you can do, that
is the only way to settle,' and I said, 'nothing doing.'    I could
not do it, not because I wanted to back out—I could not do
it."    Rubin also reminded Kremen that he agreed to take
care of the mortgage for $200, but Kremen told him to read
the contract and advised him to "go ahead and pay it."    On
May 26th, 1920, he went to Kremen and offered him $500,
the balance of the cash payment provided for by the contract,
and $52, which he said Kremen had told him would be the
expense incident to procuring the mortgage.    Kremen re-
fused however to "put the deal through" unless Rubin paid
$650 as a bonus for procuring the mortgages.    As he could
not do that, he demanded the return of the $700 he had paid,
and when Kremen refused to return it he brought this suit.
Rubin paid the $700 to Eli Dies, his brother-in-law, who was
then in Kremen's employ, and none of it was returned to him.

Morris Libauer, who owned the property at the time
Kremen sold it to Mr. and Mrs. Rubin, employed Kremen as
a real estate agent to sell it for him for $7,000, and on Feb-
ruary 2nd, 1920, he executed a written contract for the sale
of it at that price to "Alexander Kremen, Agent," and in that
contract he agreed to pay Kremen a "commission of 2½ per
cent or $175," and on May 10th, 1920, he executed a deed
conveying it to Kremen and received from him the purchase
price of $7,000 less $175 commission.    Pending the transac-
tion, Kremen had told Libauer that he was buying the prop-
erty for Rubin, and when Libauer heard from the Rubins
that they were paying $7,200 for it, he asked Kremen how it
was that he, Libauer's agent, got $7,200 for it, while Libauer
only received $7,000, when the only gain Kremen was enti-

tled to receive was his commission of $175, and Kremen told him "that for the extra money over the $7,000 he was supposed to get for them a mortgage."

The evidence offered by the appellant contradicts that of the appellees in most of its essential details. It tended to show these facts: Kremen, while engaged in the real estate business, was approached about the middle of January, 1920, by Eli Dies, then an agent for him, who told him he had a "sale for 14 N. Chester Street" and Kremen told him to sell it and also told him that the owner wanted $7,000 for it. About a week later Dies returned and said he believed he was going to sell it to Rubin, his brother-in-law. Dies, who was his bookkeeper as well as his salesman, fixed the price for Rubin, and made the contract with him for Kremen. Kremen, himself, although he wrote the contract, did not see Rubin until about two months after the contract was made, and received no money from him except through Dies. When Dies brought him the contract of sale to sign, he gave Kremen $100, and told him that he, Dies, had kept $100 and had given $100 back to Rubin as "a gratuity on the purchase price." He asked Dies why the contract called for $7,200, and Dies said: $100 I am giving back to brother-in-law and $100 is for my trouble, because the money I get from you is not enough for me to get along, and I will keep $100, and $100 I will allow to Mr. Rubin. After the contract had been executed he tried to procure a $5,000 mortgage loan on the property, but found only one person who was willing to make the loan and he demanded a bonus of $500. When he told Rubin it would cost him $500 to get the mortgage, Rubin said, in effect, he did not like it but would let him know later what he would do. Rubin came back later and asked Kremen if he could not get the mortgage for less money and he told him he could not, but that he, Kremen, would give him the commission he was to receive from Libauer and $50 in addition towards the expenses, and Rubin said, "all right, we will see you later." About two weeks before the date of settlement Mr. Rubin and Mr. Weinberg, his attorney, came into Kre-

men's office and there agreed on a settlement, under which Kremen was to give him his commission of $175 and Dies was to return him the $100 which he had retained. A day was fixed for consummating the transaction, but the matter was not closed then because Mr. Libauer did not appear. That meeting was at the office of Mr. Levin, attorney for the proposed mortgagor, and at Rubin's suggestion the matter was postponed to the following Monday at five o'clock in the afternoon. Rubin did not keep that engagement and, after waiting for him for an hour, Kremen himself paid $7,000 for the property and took title to it.

Before taking up in detail the several exceptions, we will consider a proposition advanced by the appellant, which relates not only to the relevancy of much of the testimony, but also to the right of the appellees to recover at all under the pleadings, and that, so far as we can gather, is that, since there was a written contract between the parties, and since the $700, which is the subject of the action, was paid under it, the appellees could only sue for the recovery of that sum in an action of special assumpsit for a breach of that contract, and that therefore, since this is in an action in general assumpsit on the common counts, the contract itself would be irrelevant, and the plaintiffs could not recover any sums paid by them under it.

The vice of that proposition is that this is not an action to recover damages for the breach of a contract, but one to recover money which the appellant received from the appellees in payment for property which, it is contended, he refused to convey to them in accordance with the terms of the contract. Where one party to a contract has received money in consideration of its performance, and then fails or refuses to perform it, the other party may either sue for the breach, or he may rescind the contract and sue in an action for money had and received for the recovery of the amount paid. In the one case he sues to recover the damages suffered as a result of the breach, while in the other he sues to recover money which

in justice and good conscience belongs to him, and which the defendant received under a contract which was rescinded as a result of his fault or failure to perform it.

These principles are generally accepted and abundantly supported by authority.

In *Cromwell* v. *Chance Marine Co.*, 131 Md. 105, which was an action on the common counts for the recovery of money paid for the purchase of a motor boat under a contract which the vendor failed to perform, this Court, speaking through JUDGE BRISCOE, said: "The law is well established that in an action of assumpsit for money had and received the plaintiff can recover from the defendant any money belonging to the plaintiff, obtained from him through mistake, fraud or deceit. It lies to recover money in the possession of the defendant which in justice and good conscience belongs to the plaintiff." And to the same effect is the case of *Rayner* v. *Wilson*, 43 Md. 445.

In *Dix* v. *Marcy*, 116 Mass. 417, it is said: "Where a person pays money, renders service, or conveys property under an agreement, within the statute of frauds, and which the other party refuses to perform, an action will lie by such person, against the party so refusing, to recover the money paid, or the value of the services rendered or property conveyed," and in 2 *R. C. L.*, page 788, it is said: "The action lies to recover money paid on a rescinded contract either where by the terms of the contract it is left in the plaintiff's power to rescind it by an act, and he does it, or where the defendant afterwards assents to its being rescinded. It is common practice for purchasers of real estate, upon the refusal or inability of the vendor to convey, to bring an action of assumpsit for money had and received to get back the purchase price, instead of covenant to recover damages for a breach of the contract." See also 27 *Cyc.* 867, and *Williston, Contracts*, par. 1457.

Having stated the general principles, the only question remaining for consideration in connection with the appellant's

contention is whether the plaintiffs' evidence was legally suf-
ficient to permit the inference that they were entitled under
the circumstances of the case to rescind the contract. With-
out reviewing again evidence to which we have once referred,
it is sufficient to say that, assuming that evidence to be true,
it was in our opinion legally sufficient to support that infer-
ence.

This brings us to a consideration of the several exceptions.

The first exception relates to the court's ruling allowing
the contract between Kremen and the Rubins to be intro-
duced in evidence; the second exception to the court's refusal
to strike out evidence as to what was said and done in the
course of an interview between Rubin and Kremen at the
latter's office relative to the execution of the contract between
them; the third to the court's action in permitting the intro-
duction in evidence of the contract of sale between Libauer
and Kremen; the fourth, fifth, sixth and seventh exceptions
to the court's action in allowing evidence to be introduced to
prove that Kremen received a commission of $175 from
Libauer for the sale of the property and that he purchased it
from Libauer for $7,000; and the ninth exception to the
court's rulings in overruling four motions to strike out the
evidence to which the exceptions we have named refer. As-
suming, without so deciding, that these exceptions are in
proper form, we find no error in the rulings to which they
relate.

The object of the action is the recovery of money paid by
the appellees to the appellant under a contract, which they
contend he refused to perform, for the purchase of property
which they say he refused to convey. Manifestly the contract
under which the payments were made was admissible to ex-
plain their purpose and object. And because of the ambiguity
as to the precise relation which Kremen bore to the appellees,
and as to the character and capacity he assumed in receiving
the money paid him by them, it was both material and rele-
vant to show what his relations were both to the property in
question and to its owner Libauer. These were not matters

*inter alios*, but facts and circumstances directly connected with the payment of the $700 by Rubin to Kremen and explanatory thereof.

The eighth exception relates to the court's refusal to allow the defendant to ask the witness Dies on cross-examination if he, with others, had not been indicted for a conspiracy to defraud and to obtain goods under false pretences. It was held in *Bonaparte* v. *Thayer,* 95 Md. 548, that the mere fact that a witness had been indicted would not reflect upon his credibility, and was not admissible in evidence to impeach him, and since the question could have had no purpose other than the impeachment of the credibility of the witness, there was no error in this ruling.

The appellee, testifying in his own behalf, having said that he had himself bought the property, was asked if he paid a bonus for getting the money. Upon objection the court refused to allow the question. The witness was then asked if he had resold the property, and an objection to this question was also sustained, and he was later asked: "It was Mr. Libauer who insisted on your settling for the property?" and an objection to this question was sustained. These rulings are the subject of the eleventh, twelfth and thirteenth exceptions. The facts sought to be elicited by the question contained in these exceptions had no apparent relevance to the issues involved and we see no error in these rulings. The fact that he took the property at Libauer's insistence, or that he afterwards resold it, or that he paid a bonus to procure the money to pay for it, if we assume that such facts existed, reflected no light upon the issue involved, which was whether Kremen's refusal to convey the property to Rubin under the circumstances of the case gave the latter the right to rescind the contract.

In the cross-examination of Kremen he was asked for whom he acted when he signed the contract with Rubin. An objection to the question was overruled and he answered, "for myself as agent for Mr. Libauer," and this ruling is the subject of the fourteenth exception. The contract was signed by

him apparently in his individual capacity, but there was testimony that he was acting for Libauer and also for the Rubins in that transaction, and in view of the confusion incident to that conflict we think the question was properly allowed. The fifteenth exception presents no question for our consideration and need not be considered. Mr. Levin, an attorney, who was present when Kremen bought the property, was asked, by the appellant's counsel, who it was who suggested that Kremen take title to the property. An objection to the question was sustained, and since the question had no apparent connection with any issue in the case we find no error in that ruling, which is the subject of the sixteenth exception.

Harry O. Levin, testifying on behalf of the defendant, said that Rubin was shown a balance sheet, which indicated that he was to pay a five hundred dollar bonus for procuring a mortgage on the property. Isaac R. Weinberg, called by the plaintiffs to rebut that, was asked: "Mr. Levin has just testified that Mr. Rubin made no objection to the $600 that was to be charged by way of bonus for procuring the mortgages on that property?" An objection to the question was overruled, and this ruling is the subject of the seventeenth exception. The amount stated in the question was larger than that referred to by Mr. Levin, but the error at most was harmless, and can scarcely be said to have injured the appellant.

At the conclusion of the plaintiffs' case, the defendant offered four prayers, which, in effect, were demurrers to the plaintiffs' evidence, and which were refused, and the defendant then introduced testimony and thereby waived his objection to the court's action in refusing these prayers, and we cannot therefore, consider the tenth exception which relates to the rulings in regard to them.

At the conclusion of the whole case, the plaintiffs offered five prayers, of which the first, second and fourth were granted, and the defendant fourteen, of which the fifth, seventh, ninth, tenth and twelfth were granted and the others

refused, and these rulings are the subject of the eighteenth exception. In our opinion the plaintiffs' second and fourth prayers should not have been granted. The contract of sale provides that $900 of the purchase price should be paid in cash and "balance in mortgage expense of procuring same should be paid by vendee." It was entirely silent as to the terms of the mortgage, such as the time of payment of the principal and interest, the rate of interest, and as to the amount to be paid for procuring it. Nor was it stated in it that any one other than the vendor was to supply the money.

If Kremen charged Rubin $200 more for the property than good faith in the discharge of his duties as agent required, and if, when his attention was called to that fact, he agreed, in consideration of the overcharge, to procure such mortgages as were necessary to consummate the transaction at an additional expense of $52, then Rubin's promise to pay the $200 overcharge and the additional $52 was a sufficient consideration to support that agreement, and it to that extent superseded the indefinite language of the original contract.

The plaintiffs' first prayer, while inartificially drawn, fairly submits that theory to the jury, and we find no error in the ruling upon it, and in our opinion the special exception to it was properly overruled. It assumed a number of facts, but as no objection on that ground was made below, that objection cannot affect our action in regard to it.

The plaintiffs' second prayer is bad because it directs a verdict for the plaintiffs without requiring the jury to find that the defendant received at any time any of the money sued for from them, and as he denied having received part of the money sued for, that omission may well have prejudiced the defendant. It is also defective in other particulars, but for this reason alone the prayer should have been refused.

There was also error in granting the plaintiffs' fourth prayer. Under that prayer the jury are required to find for the plaintiffs if they find: "That the defendant in selling the property, 14 North Chester Street, to the plaintiffs, was act-

ing as agent for another, and if they further find that he retained and still retains, the seven hundred ($700) dollars paid on account of the purchase of said property by the plaintiffs, and if they further find that he thereafter purchased the property from the owner for seven thousand ($7,000) dollars." The theory of that prayer is that, if a real estate broker sells property and the vendee pays a part of the purchase money, and the broker afterwards buys the property himself and fails to return the payments made by the original vendee, that then the vendee can recover the money so paid in such an action as this without regard to whether the first contract was rescinded by mutual consent or was broken by the original vendee, or whether there was any relation of principal and agent between the broker and the vendee. We know of no authority for such a proposition and, in our opinion, this prayer should not have been granted.

The defendant's first, second, third and fourth prayers, which in effect were demurrers to the evidence, were for reasons already given properly refused, as were the defendant's special exceptions to the plaintiffs' granted prayers, and, without discussing them in detail, we find no error in the refusal of the defendant's sixth, eighth, eleventh, thirteenth and fourteenth prayers.

Because of the errors indicated in granting the plaintiffs' second and fourth prayers, the judgment appealed from must be reversed and a new trial awarded.

> *Judgment reversed, with costs to the appellees and cause remanded for a new trial.*