SLEDGE & NORFLEET COMPANY *v.* MANN.

4-4578

Opinion delivered March 29, 1937.

*Marvin B. Norfleet,* for appellant.

*Roy D. Campbell,* for appellee.

McHANEY, J. Appellant is a cotton factor of Memphis, Tennessee. Appellee is a distinguished member of the bar of the courts of this state and all federal courts, including the Supreme Court of the United States, in all of which he has practiced for many years. Prior to the matter complained of, he had represented appellant as counsel in many matters in Arkansas, and did so represent it in this matter, which, briefly stated, is as follows: Appellant was the mortgagee in a real estate mortgage, securing an indebtedness of approximately $10,000, on certain lands in St. Francis county, Arkansas, known as the Varner lands. The owner and maker of the mortgage had permitted the lands included therein to forfeit and sell for the state and county taxes due thereon, which, including penalties and interest, including improvement district taxes, amounted to $745.50. Said land, or a portion thereof to the amount of 720 acres, had been permitted to go delinquent in St. Francis County Road Improvement District No. 1, and, at a chancery court sale on December 10, 1926, pursuant to a decree of foreclosure for delinquent betterments, same was sold to the district for the delinquent taxes, penalty and costs. On June 15, 1929, the district, for a consideration, assigned its certificate of purchase to the East Arkansas Investment Company, of Forrest City, which latter company had redeemed from state and county forfeitures at a cost to it, including the amount paid for the certificate of purchase, of the sum aforesaid. Appellant had requested appellee to assist it in straightening out the title to said lands, and on August 23, 1929, appellee wrote appellant the following letter which is the basis of this lawsuit:

"As you have heretofore been advised, the East Arkansas Investment Company is now the owner of these

lands by reason of sale and purchase at chancery court sale for road improvement district taxes. As a rule, these sales, having been made by the chancery court and ample time given for redemption, are held to be valid and pass title and, while we have not investigated these particular sales, it is fairly safe to say that the investment company could hold the title so acquired.

"The amount actually paid out by the investment company on the property for taxes, etc., is approximately $750. It might vary $5 or $10 from this sum when interest is accurately counted. They have agreed, after some parley, to accept, in addition to the amount paid out by them for taxes and interest on same, the sum of $720 which equals $1 per acre for the land. We met with the board and endeavored to get price of $500, but they were insisting on $1,000 but finally agreed to the sum mentioned. This would make a total of approximately $1,450 to clear the land of these sales. The investment company would execute a quitclaim deed to the property.

"Our judgment is that it would be well for you to make this payment and protect the title. This should be attended to at once as they will not hold it open but for a few days. It might not be a bad idea for you to telephone us upon receipt of this letter so that we may keep the matter alive until you can either accept or reject the proposition."

Although this letter was written, as stated, on August 23, 1929, this action was not commenced until nearly four years later, August 7, 1933. By this action appellant sought to recover from appellee $720. It alleged that it acted pursuant to the advice contained in said letter, believing same to be true and being ignorant of the falsity thereof, and paid said investment company $1,465.50 for its quitclaim deed. It alleged that appellee made false and fraudulent representations and statements in said letter and knew or ought to have known (a) that the investment company had no title to said lands except such as was subject to redemption, (b) that said sum of $1,465 was not required to clear said lands of said sales, (c) that it was not well for appellant to pay said sum, and (d) that

no necessity existed for quick action. It asserted that a right of redemption existed from the sale for road district taxes by reason of § 14 of act 112 of the Acts of 1927, which enlarged the period of redemption for three years in road districts from the date of the passage of said act, March 4, 1927, to March 4, 1930, and that said lands could have been redeemed without payment of the $720 to said investment company. Judgment was prayed in said sum.

Appellee answered admitting his authorship of the letter, his relationship as counsel for appellant and assumed full responsibility for all statements made in said letter. He denied all allegations of false and fraudulent misrepresentations, as well as all other charges of carelessness, recklessness and bad faith in the complaint. He alleged that, at the time he wrote said letter, he had before him the record of said road improvement district sale which condemned said lands to be sold for delinquent assessments, the report of the commissioner making the sale, the finding of the court that same had not been redeemed as provided by law and directing the commissioner to execute his deed therefor to said investment company, which was done, and in all things approved and confirmed. Other allegations in the answer were made further justifying appellee in the advice given, but we deem it unnecessary to set them out.

Upon a hearing the trial court dismissed the complaint for want of equity. The case is here on appeal.

We agree with the trial court that appellant's alleged cause of action is without merit, either in fact or in law. This is true even though appellee overlooked the act of 1927, enlarging the period of redemption, as above stated, and the effect of our decisions construing such statutes. The letter relied on made no false and fraudulent representations, as alleged. The statement that the investment company is now the owner of said lands by reason of the sale for road improvement district taxes was true. It was the then record owner. It had a deed from the commissioner making the sale pursuant to decree of the chancery court, which had been approved and confirmed, and in which was the recital: ''And, whereas,

two years have elapsed since the date of said sale, the said property has not been redeemed as provided by law,'' etc. Another statement is that such sales are, as a rule held valid. Such is the fact. There is nothing false or fraudulent about that. Another statement is that he had not investigated this particular sale, but it is fairly safe to say the investment company could hold the title so acquired. That statement in the letter was alone sufficient notice to appellant that appellee was not rendering an opinion on the title to said land and was not an insurer of the suggestions made. The other statements in the letter as to what the investment company had expended and what it demanded, and that it would be well to make the payment at an early date were true. As we construe this letter there is nothing in it intentionally false and nothing remotely resembling fraud, and therefore it contains nothing actionable. It appears to us to be more in the nature of sound, friendly advice from one old friend to another, to choose the lesser of two evils in which such other finds himself. Whether to pay the $720 profit demanded by the investment company and get a clear title without any risk, or whether to get into costly litigation, with a fair probability of winning, but with a possibility of loss of an investment of $10,000, plus costs and attorney's fees, was the question before appellee, and we think any good counsellor, who had his client's interest at heart, might have given the same advice as did appellee.

The law of the subject is well settled. In *First National Bank of Newark* v. *People's National Bank of Springfield,* 97 Ark. 15, 132 S. W. 1008, the late Chief Justice HART quoted with approval from *Hanger* v. *Evins,* 38 Ark. 334, the following: "A false representation, to be actionable, must not only mislead, but must be made fraudulently, and with that intent. No one can be held liable for a false representation who honestly believed it when made, however false it may be; but he is liable if he knew it to be false, or, knowing nothing about it, asserted it to be true." And in *Ryan* v. *Batchelor,* 95 Ark. 375, 129 S. W. 787, it is said: "Now, before a representation will be considered fraudulent in law so as to

give a right of action therefor, it must be made relative to a matter susceptible of accurate knowledge, and must be a statement importing knowledge on the part of the person making the representation; and it must also be relied on as such. If the statement was made only as an expression of opinion, or if it was not made in a manner so as to induce the other to act in reliance thereon, then such representation, even though not true, would not be sufficient to base an action thereon for deceit."

In *Troyer v. Cameron,* 160 Ark. 421, 254 S. W. 688, the court quoted the following as the rule of the court governing actionable misrepresentations: "In order that representations may be fraudulent in law, they must be made by one who either knows them to be false, or else, not knowing, asserts them to be true, and made with the intent to have the other party to act upon them to his injury, and such must be their effect." Citing a number of cases.

Under this well-settled rule, appellee was not guilty of fraudulent misrepresentation in writing the above-mentioned letter, even though the land was subject to redemption under a statute with which he was not familiar, because there was no intent to defraud. The contrary intention appears. It is not alleged or even intimated that appellee profited by such advice from the investment company. He made no positive assertion that such title was good in the investment company, but only that such sales were generally held to be good, and he made the positive statement that he had made no examination of this particular sale. The finding of the court was that the period of redemption had expired and although both he and the court may have been in error in this regard, it cannot be the basis for an action of fraudulent misrepresentation.

The decree of the chancery court is correct, and must be affirmed.