MARTENS CHEVROLET, INC. ET AL. *v.* HOWARD F.
SENEY ET AL.

[No. 64, September Term, 1981.]

*Decided January 5, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODWSKY, JJ.

*Charles Michael Tobin* and *James S. Groves,* with whom were *Shulman, Rogers, Gandal, Tobin & Ecker, P.A.* on the brief, for appellants.

*Lee T. Ellis, Jr.* for appellee Howard F. Seney. *William H. Clarke,* with whom were *Galiher, Clarke, Martell & Donnelly* on the brief, for other appellees.

·DIGGES, J., delivered the opinion of the Court.

In this action we consider whether there still exists in Maryland a tort suit for negligent misrepresentation independent of one for deceit. The case arose when appellant Martens Chevrolet, Inc.[1] instituted in the Circuit Court for Montgomery County this action against the appellees, Loving Chevrolet, Inc. and its sole stockholders, Franklin Loving and Howard F. Seney, alleging in separate counts breach of contract, deceit and negligent misrepresentation arising from the sale of an automobile dealership. On the apparent belief that no such action exists in Maryland, the trial judge granted at the close of appellant's case the defendants' motion for a directed verdict on the negligent misrepresentation count; a directed verdict was also granted in favor of the defendants on the breach of contract claim.[2]

---

1. In addition, Imperial Investment Company and Harry J. Marten, III, joined Martens Chevrolet, Inc. as plaintiffs. In the interest of simplicity we shall refer to these plaintiffs-appellants in the singular and as Martens Chevrolet, Inc.

2. No appeal was taken from the contract count ruling, and consequently we do not consider the propriety of it here.

The remaining count, sounding in deceit, was, however, submitted to the jury for its consideration, but that body returned a verdict in favor of Loving, Seney and their company. After the appellant noted its appeal to the Court of Special Appeals, we granted certiorari on our own motion, prior to consideration of the matter by that court, primarily to clarify seeming confusion in the law of this State concerning the existence of an action for negligent misrepresentation.[3]

For reasons which we will explore presently, we conclude that the tort of negligent misrepresentation is viable in Maryland. Consequently, as the issue presented here arose in the context of a motion for directed verdict, the evidentiary background will be stated in a light most favorable to the plaintiff-appellant. *Impala Platinum v. Impala Sales,* 283 Md. 296, 328, 389 A.2d 887, 905-06 (1978). In February, 1976, Imperial Investment Company through its officers, Harry J. Marten, Jr. and his son, Harry J. Marten, III, initiated negotiations for the purchase of a Chevrolet automobile dealership owned in corporate form by Franklin Loving and Howard F. Seney. Throughout the bargaining period, the Martens informed the sellers that they intended to continue the operation of the Chevrolet franchise after the sale, and therefore desired accurate information concerning the past profitability of the enterprise. When asked during the first meeting of the parties about the financial status of the dealership, Mr. Seney responded by handing the buyers a handwritten financial "trend" sheet and stating, "this pretty well depicts the trends of how we have been doing." This sheet received by the Martens contained a list of the "net profit" figures for each year the dealership had been in operation, including a figure showing $2,211 profit for the previous year, 1975. Unknown to the buyers, this sum failed to incorporate adjustments for such items as bonuses and taxes which are routinely reflected in audited financial statements. After examining the trend sheet, the accountant

---

**3.** In addition, because we address this case on direct appeal, we are required to consider two evidentiary issues raised by appellant.

for the buyers asked during the negotiating period to inspect the audited financial statements of the dealership for 1975, but he was told by Mr. Seney that they had not been prepared. In a subsequent meeting, the Martens' accountant once more sought to review the audited financial statements, but again he was informed by Seney that no such documents existed. Throughout the negotiations Loving and Seney failed to mention any other financial documents to the Martens which pertained to the profitability inquiry, and the sellers continually reassured the buyers that they could rely on the trend sheet as it accurately reflected the financial status of the dealership. Since this sheet revealed the Loving operation to be mildly profitable, the buyers, in reliance on it, concluded that with their industriousness and management efficiency they could substantially improve the profitability of the business. Accordingly, acting on behalf of their corporation, the Martens entered into an agreement with the owners of Loving Chevrolet for the purchase of the dealership on May 6, 1976.

After the franchise operated as Martens Chevrolet, Inc. for six months, the accountant for the new company presented its owners with a statement revealing a $187,000 loss. The Martens were baffled as to the reason for the dealership's financial plunge until its comptroller, who had formerly worked in that capacity for the seller, divulged a 1975 year-end financial statement which he had prepared for Loving Chevrolet listing a deficit for that year of $39,153.00, instead of a $2,211 profit as reflected in the 1975 trend sheet. In addition, the comptroller gave the new owners a financial statement completed by a certified accountant, following an audit, which stated that the losses sustained by the former dealership in that year were not $39,153, but, rather, $69,000. Both of these documents had been prepared well before the date of sale, but the sellers had neglected to inform the buyers of their existence. On the basis of this newly received information, the Martens brought the present action against Loving, Seney and their company.

(i)

With the relevant factual predicate in hand, we turn now to address the question of whether there is presently cognizable in Maryland a tort action for negligent misrepresentation. We begin our inquiry by noting that initially under the common law there existed no separate tort of negligent misrepresentation. Thus, if a party was injured by the false representations of another, his only recourse in tort, if there was one, compelled the bringing of an action for deceit and proving all the elements of that tort. *Buschman v. Codd,* 52 Md. 202 (1879); *Lamm v. Port Deposit Homest'd Asso.,* 49 Md. 233 (1878); *McAleer v. Horsey,* 35 Md. 439 (1872). The requirements for a successful deceit suit, as they have evolved in Maryland, were stated by this court in *Gittings v. Von Dorn,* 136 Md. 10, 15-16, 109 A. 553, 554 (1920), over fifty years ago, and they remain the same to this day:

> To entitle the plaintiff to recover it must be shown: (1) that the representation made is false; (2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation.

The critical element of the tort of deceit that distinguishes it from others arising from false representation is scienter on the part of the defendant — intent to deceive the other party. In formulating the contours of this state of mind requirement, our predecessors in *Cahill v. Applegarth,* 98 Md. 493, 56 A. 794 (1904), essentially embraced the view established

in the landmark English case, *Derry v. Peek,* 14 App. Cas. 337, 374 (1889), where Lord Herschell announced:

> First, in order to sustain an action of deceit, there must be proof of fraud, and nothing short of that will suffice. Secondly, fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false. Although I have treated the second and third as distinct cases, I think that the third is but an instance of the second, for one who makes a statement under such circumstances can have no real belief in the truth of what he states. To prevent a false statement being fraudulent, there must, I think always be honest belief in its truth.[4]

The teachings of *Cahill* were reemphasized one year later in *Donnelly v. Baltimore Trust & Guarantee Co.,* 102 Md. 1, 13, 61 A. 301, 306 (1905), where this Court asserted that "[t]he foundation of the [deceit] action is actual fraud, and nothing short of this will suffice. Consequently, a misrepresentation believed by the speaker to be true, though induced by his ignorance or negligence, will not sustain an action for deceit." Our later cases have adhered to this principle. See *Appel v. Hupfield,* 198 Md. 374, 379, 84 A.2d 94, 96 (1951); *Holt v. Kolker,* 189 Md. 636, 639, 57 A.2d 287, 288 (1948).

Realizing the inequities stemming from the strictures imposed for recovery in a deceit action, and being cognizant of the development of this area of the law in our sister jurisdictions, this Court in 1938 recognized for the first time the existence in this State of an action for negligent misrepresentation. *Virginia Dare Stores v. Schuman,* 175

---

4. Other states have adopted this concept with respect to scienter in deceit actions. *See, e.g.,* Sledge & Norfleet Co. v. Mann, 193 Ark. 884, 103 S.W.2d 630 (1937); Lickus v. O'Donnell, 321 Ill. App. 144, 52 N.E.2d 271 (1943); Ramsey v. Reynierson, 200 Ky. 624, 255 S.W. 274 (1923); Carney v. Farmers & Merchants St. Bank, 196 Minn. 1, 263 N.W. 901 (1935); Kountze v. Kennedy, 147 N.Y. 124, 41 N.E. 414 (1895); Polley v. Boehck Equipment Co., 273 Wis. 432, 78 N.W.2d 737 (1956).

Md. 287, 1 A.2d 897 (1938).[5] In *Virginia Dare,* the plaintiff, who was employed to clean the walls of a store, stepped upon a dress display case in reliance upon negligently made statements of assurance from the agent of the proprietor-defendant that it was safe, but because the case was unable to support the weight, it promptly collapsed, causing serious personal injury. In allowing recovery for the negligent misrepresentation, as a cause of action separate from one in deceit, this Court stated:

> No Maryland case has been found directly upon the subject, but the weight of authority in other jurisdictions seems to be that such action is not necessarily confined to injuries arising from contractual relations; that the action lies for negligent words, recovery being permitted where one relies on statements of another, negligently volunteering an erroneous opinion, intending that it be acted upon, and knowing that loss or injury are likely to follow if it is acted upon. [*Id.* at 291-92, 1 A.2d at 899.]

---

5. In reaching its decision in *Virginia Dare,* this Court was to a large extent influenced by two cases from other jurisdictions, International Products Co. v. Erie R. Co., 244 N.Y. 331, 155 N.E. 662 (1927), and Cunningham v. C.R. Pease House Furnishing Co., 74 N.H. 435, 69 A. 120 (1908). Each of these cases permitted recovery for false statements, not in a deceit action, but rather, in a separate cause of action based upon negligence. This, however, is not the only theory on which other jurisdictions have made this type of misrepresentation actionable. Some courts have rejected the rule of Derry v. Peek, 14 App. Cas. 337 (1889), and extended the action of deceit to include negligent statements. *See* Anderson v. Tway, 143 F.2d 95 (6th Cir. 1944); Schoefield Gear & Pulley Co. v. Schoefield, 71 Conn. 1, 40 A. 1046 (1898); Watson v. Jones, 41 Fla. 241, 25 So. 678 (1899); Mullen v. Eastern Trust & Banking Co., 108 Me. 498, 81 A. 948 (1911); Vincent v. Corbitt, 94 Miss. 46, 47 So. 641 (1908); Jefferson Standard Life Ins. Co. v. Hedrick, 181 Va. 824, 27 S.E.2d 198 (1943). Other courts have dispensed with any requirement of fraud or negligence, and have imposed strict liability upon defendants whose false material representations cause harm. *See, e.g.,* Essenburg v. Russell, 346 Mich. 319, 78 N.W.2d 136 (1956); Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347 (1951); Moulton v. Norton, 184 Minn. 343, 238 N.W. 686 (1931); Gulf Elec. Co. v. Fried, 218 Ala. 684, 119 So. 685 (1928). For an in-depth discussion of the various paths courts have traversed in granting recovery for harmful misrepresentations, see W. Prosser, *Law of Torts,* § 107 at 704-714 (4th ed. 1971), and for a review of the development of negligent misrepresentation in Maryland, see Note, *Deceit and Negligent Misrepresentation in Maryland,* 35 Md. L. Rev. 651, 651-74 (1976).

Subsequent cases referred to the *Virginia Dare* opinion as one recognizing a recovery for negligent statements if personal injury results, *Holt v. Kolker, supra,* 189 Md. at 639, 57 A.2d at 288; *Piper v. Jenkins,* 207 Md. 308, 313, 113 A.2d 919, 921 (1955), but any implication that the action was confined to cases involving personal injury was put to rest in *Brack v. Evans,* 230 Md. 548, 187 A.2d 880 (1963), where we held that pecuniary loss is compensable under an action for negligent misrepresentation.[6] Accordingly, we reaffirm that, in Maryland, there exists a cause of action for negligent misrepresentation separate from that of deceit.

The only one of our many decisions in this area which in any way impinges upon this just announced reaffirmation is *Delmarva Drill Co. v. Tuckahoe,* 268 Md. 417, 302 A.2d 37 (1973), where certain statements and the result there reached seemingly portended the elimination of negligent misrepresentation as a viable tort cause of action in this State. See *Geo. Byers Sons, Inc. v. East Europe Import Export,* 488 F. Supp. 574, 586 (1980); *Leonard v. Sav-A-Stop Services,* 289 Md. 204, 213 n.7, 424 A.2d 336, 240 (1981); Note, *Deceit and Negligent Misrepresentation in Maryland,* 35 Md. L. Rev. 651, 671-73 (1976). Although, when compared with our prior cases in this area, *Tuckahoe* apparently supports the view that the tort has been eliminated, we nevertheless intended no such departure in that case and have subsequently recognized the existence of the cause of action. See *Vance v. Vance,* 286 Md. 490, 408 A.2d 728 (1979). Thus, to the extent that *Tuckahoe,* when viewed in light of its factual background, casts any doubts on the existence of negligent misrepresentation as an avenue for tort recovery in Maryland, we hereby overrule it.

We summarize and clarify. The principal elements of the tort of negligent misrepresentation, as formulated in

---

6. In *Brack,* a stockbroker negligently gave erroneous advice concerning the purchase of stock to one of his clients who suffered a financial loss when he relied on the information. Although the evidence failed to establish the scienter necessary to support an action for deceit, we held that it would authorize recovery in negligence. This position was later reaffirmed in St. Paul at Chase v. Mfrs. Life Insur., 262 Md. 192, 278 A.2d 12 (1971). See Local 75, U. Furn. Workers v. Regiec, 19 Md. App. 406, 311 A.2d 456 (1973).

*Virginia Dare, supra,* and subsequent cases decided by this Court, may be outlined as follows:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

In this regard, see *Virginia Dare Stores v. Schuman, supra; Holt v. Kolker, supra; Piper v. Jenkins, supra; Brack v. Evans, supra; St. Paul at Chase v. Mfrs. Life Insur.,* 262 Md. 192, 278 A.2d 12 (1971); *Vance v. Vance, supra;* Note, 35 Md. L. Rev. *supra* at 662; *see generally Geo. Byers Sons, Inc. v. East Europe Import Export, supra* at 586; James, Gray, *Misrepresentation,* 37 Md. L. Rev. 286 (part I), 488 (part II) (1978).

In the present case, the appellants, by their amended declaration, alleged in separate counts both negligent misrepresentation and deceit. Nothing prohibits a plaintiff from pleading both deceit and negligent misrepresentation in one declaration and then relying on the same nucleus of facts in an attempt to satisfy the differing burdens of proof on these alternative claims. See Md. Rule 313; *Peurifoy v. Congressional Motors,* 254 Md. 501, 515, 255 A.2d 332, 340 (1969). The trial judge, however, by directing a verdict in this case, eliminated the possibility of recovery under the negligent misrepresentation count, seemingly on the ground that the cause of action does not exist in this State. If this be true, as indicated above, it is incorrect. On the other hand, if the directed verdict on the negligent misrepresentation count resulted from the trial judge's determination that there was insufficient believable evidence to support the

claim, then he was also in error, for a review of the evidence earlier related in this opinion demonstrates, in our view, its sufficiency to at least create a jury issue concerning whether recovery may be had under the negligent misrepresentation count.[7]

### (ii)

We turn now to address the two evidentiary questions presented by this appeal, either of which, contends appellant, requires a new trial of the deceit claim. The first concerns the cross-examination during trial of one of the appellant's witnesses (not a party), Harry J. Martens, Jr., by the attorney for appellee Loving. The colloquy which gave rise to this issue occurred as follows:

> Defense Counsel: Mr. Martens, I want to ask you something else about another subject. A suit such as this is distasteful when you are charging somebody with deceit, you know that?
>
> Mr. Martens: Yes.

---

7. Appellees have also argued that even if negligent misrepresentation is a viable tort action in this State, it can never be applied to statements made in connection with consummation of an arm's length transaction, as was involved in the present case. We find nothing in *Virginia Dare* or its progeny to support such a sweeping assertion and we reject it. In addition, appellees make oblique reference to a general integration clause in the contract of sale of the dealership which states that it "supercedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written...." While not directly so stating, appellees imply that this clause shields them from liability for any breach of duty that otherwise may have been imposed. In this regard, we agree with the position taken by the New York Court of Appeals in Jackson v. State:

> A party to a contract cannot, by misrepresentation of a material fact, induce the other party to the contract to enter into it to his damage, and then protect himself from the legal effect of such misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable for the misrepresentation which induced the other party to enter into the contract. The effect of misrepresentation and fraud cannot be thus easily avoided. If it could be, the implied covenant of good faith and fair dealing existing in every contract would cease to exist. [241 N.Y. 563, 150 N.E. 556 (1925) (adopting the opinion of Hubbs, J., in Jackson v. State, 210 App. Div. 115, 205 N.Y.S. 658, 661 (1924)); compare Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 157 N.E.2d 597 (1959).]

Defense Counsel: You have been charged with deceit by the Chrysler Company, haven't you?

Plaintiff's Counsel: Objection.

A bench conference ensued during which the trial judge overruled the appellant's objection and allowed the question. The colloquy then continued.

Defense Counsel: I want to rephrase that question to get the proper words in. You have been charged in this lawsuit 52800 filed in this court by the Chrysler Corporation with fraud and conspiracy to defraud, haven't you?

Mr. Martens: Yes, sir.

Defense counsel's obvious purpose was to impeach the credibility of Martens' testimony concerning the alleged deceit of the appellees in the sale of the automobile dealership by revealing to the jury the fact that Martens, himself, had been formally charged with fraud in an unrelated civil court case by another party.

It is hornbook law that when a person testifies as a witness, generally he may be cross-examined on such matters and facts as are "likely to affect his credibility, test his memory or knowledge, show his relation to the parties or the cause, his bias, or the like," *Kantor v. Ash,* 215 Md. 285, 290, 137 A.2d 661, 664 (1958), and the allowance of such questioning is normally reserved for the sound discretion of the trial judge. *Shupe v. State,* 338 Md. 307, 310, 208 A.2d 590, 592 (1965); *Wells v. State,* 236 Md. 381, 388, 203 A.2d 912, 917 (1964); *Lloyd v. State,* 219 Md. 343, 349, 149 A.2d 369, 373 (1959), *cert. denied,* 359 U.S. 1014 (1959). It is equally clear, however, that when the receipt of evidence is "manifestly wrong and substantially injurious" in the circumstances of a particular case, we have no alternative but to reverse. *Beahn v. Shortall,* 279 Md. 321, 331, 368 A.2d 1005, 1011 (1977); *Shupe v. State, supra,* 238 Md. at 310, 208 A.2d at 592; *Plank v. Summers,* 205 Md. 598, 606, 109 A.2d 914, 917 (1954). Although this court, as well as the General Assembly, has allowed evidence of certain criminal con-

victions to be used to impeach the general credibility of a witness, *Linkens v. State,* 202 Md. 212, 220, 96 A.2d 246, 250 (1953); *Nesbit v. The Cumberland Contr. Co.,* 196 Md. 36, 40, 75 A.2d 339, 341-42 (1950); Md. Code (1980 Repl. Vol.), § 10-905 of the Courts and Judicial Proceedings Article,[8] we have firmly adhered to the rule that evidence concerning any other specific acts of misconduct is inadmissible for such purposes. *E.g., State v. Giles,* 239 Md. 458, 472-73, 212 A.2d 101, 110 (1965); *Rau v. State,* 133 Md. 613, 617, 105 A. 867, 868 (1919); *see Durkin v. State,* 284 Md. 445, 397 A.2d 600 (1979) (character of witness for truthfulness may only be impugned by testimony of personal opinion or general reputation in the community). This restriction is especially appropriate where, as here, the cross examiner utilizes mere accusations of misconduct to attack the character of a witness. In this regard, our predecessors in *Bonaparte v. Thayer,* 95 Md. 548, 559, 52 A. 496, 499 (1902), noted: "Whatever may be the law elsewhere, the courts of this State have always recognized the distinction . . . between actual misconduct, itself, and the charge of misconduct, and have excluded the latter." *Accord, Taylor v. State,* 278 Md. 150, 153, 360 A.2d 430, 433 (1976); *Burgess v. State,* 161 Md. 162, 170, 155 A. 153, 156 (1931); *Nelson v. Seiler,* 154 Md. 63, 68, 139 A. 564, 566 (1927). Thus, in the present case, the disputed question was not admissible for the purpose of impeaching Martens' credibility, nor was it otherwise relevant, and its injurious effect was unmistakable. Accordingly, we will reverse the judgment entered on the deceit count.

The final matter presented in this case concerns the trial

---

**8.** Section 10-905 (a) reads:

(a) In general — Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime. Evidence of conviction is not admissible if an appeal is pending, or the time for an appeal has not expired, or the conviction has been reversed, and there has been no retrial or reconviction.

This evidentiary principle has been applied in civil cases. Nelson v. Seiler, 154 Md. 63, 139 A. 564 (1927); Kremen v. Rubin, 139 Md. 682, 116 A. 640 (1922); Bonaparte v. Thayer, 95 Md. 548, 52 A. 496 (1902).

judge's decision to admit portions of a deposition into evidence at the trial. Although the court had ordered that all discovery in the case be concluded no later than October 21, 1980, appellees, in disregard of this order, and with only 24 hours notice to opposing counsel, deposed a General Motors' employee in Warren, Michigan two weeks after the discovery deadline had passed. In this regard, Maryland Rule 400 (a) provides:

> Notwithstanding any other provision of this Chapter, the court may at any time order that discovery in an action be completed by a specific date or time, which shall be a reasonable time after the case is at issue. The court may, for good cause shown, enlarge or shorten the time specified in its order.

Since no modification of the discovery terminating order was sought by the appellees here, it is manifest that the deposition in question was taken in violation of the Maryland Rules. However, as we have already concluded on other grounds that a new trial is required on the deceit and negligent misrepresentation claims, we pursue the matter no further. Parenthetically, we note that should the new proceedings which we award take place, and the appellee desire again to introduce this witness' testimony in deposition form, it would be prudent to redepose him — this time in accord with the appropriate Maryland Rules.

> *Judgment of the Circuit Court for Montgomery County reversed and case remanded to that Court for a new trial.*
>
> *Costs to be paid by the appellees.*